McBride, judge,
delivered the opinion of the court.
Davis brought his action of trover in the Washington circuit court against Dean to recover damages for the conversion of two slaves. Plea, not guilty : judgment for plaintiff: motion by defendant for a new trial, which was overruled, exceptions taken and the case brought up by appeal.
On the trial, in support of the issue the plaintiff read in evidence a mortgage executed by Augustus Jones and wife to Timothy Davis, on the 19th June 1838, duly acknowledged on the same day and admitted to record on the 18th July 1838, in the recorder’s office of Washington county; by which the said Jones and wife conveyed the said slaves, together with a large amount of other property, to secure Davis in the payment of $30,000. The mortgage, is in the usual form of such instruments, with the exception, that it provides the slaves shall be reserved until the other property be sold and then sold if an amount sufficient has not been made out of the other estate to satisfy the mortgage, debt, and costs; and that the slaves are to remain in possession of Jones un;til their sale shall become necessary as before provided. This mortgage was foreclosed by a petition filed for that purpose on 5th September 1843; upon which judgment was had on the 28th October 1845; execution on the judgment 3d December 1845, upon which, and two subsequent executions, the real estate conveyed in the mortgage was sold, and produced the sum of about $600; there was also sold one negro man, named in the mortgage for about $50—the other negroes not found by the sheriff.
Evidence was also given tending to prove that the negroes sued for, were in the possession of Jones, the mortgagor, from the year 1836 to 1842 or 3, after which they were in the possession of Dean the defendant. That one of the negroes was worth from $500 to $700, and the other worth from $1200 to $1500—that a demand was made of the defendant Dean for the negroes, prior to the institution of this suit, who refused to deliver them to the plaintiff’s agent.
The defendant gave in evidence a record of the district court of the United States, with the endorsements and certificates thereon—being a distress warrant issued by the solicitor of the treasury against Augustus Jones and his securities, dated 25th May 1837, recorded in the office of the district court of Missouri on the 22 July 1837. By virtue of which the marshal of said district on the 15th November 1838, levied upon the *115 negroes in question, and filed his said levy for record in the office of the clerk of the court for said district, on the 3d May 1839; and sold said negroes on the 11th June 1839; when James M. White became the purchaser at the sum of $1539, and received possession of said slaves.
Next a mortgage from James M. White to the county of Washington, 6th August 1842, to secure a debt due by Jones as principal and White, Dean and McCabe as securities, to the county, for the sum of $2,600, and interest thereon, the mortgage duly acknowledged and recorded. Then an order from the county court of Washington county, made at of certain real estate, and also the negro slaves in controversy, dated the November term 1843, directing the sheriff to levy and make the
" ' ' 1 ° by; but the court refused to permit the same to be rea , and the defendant excepted. suit brought by the plaintiff Davis against Jones, to^^fow that the mortgage from Jones to Davis was fraudulent and intended to defraud creditors, and that Jones did not owe the debt intended to be secured thereof J2
The plaintiff asked and the court gave the following instructions to the jury :
1st. That the distress warrant given in evidence is not a lien upon the personal property until the same is levied.
2d. That the mortgage deed from Jones to Davis being prior in date to the levy of the distress warrant, and sale under it, is the elder and better title than the title acquired by the said sale, unless the said mortgage was fraudulent and contrived to hinder, delay and defraud the creditors of Jones.
3d. That if the jury find for the plaintiff, they should find the value of the property; and if they think right, lawful interest thereon, from the date of the conversion of the slaves to the present time.
4th. There is no evidence before the jury going to show fraud in the giving of the mortgage from Jones to Davis.
5th. That the mortgage from Jones to Davis having been acknowledged and recorded according to law, is notice to all subsequent mortgagees and purchasers, of the contents of the mortgage.
6th. The distress warrant of the United States against Jones did not *116 create any lien or give any preference to the United States over the mortgage or conveyance given by Jones to Davis.
To the giving of which the defendant excepted; and the defendant thereupon prayed the following instructions to the jury :
1st. If the jury shall find from the evidence that the slaves in the plaintiff’s declaration mentioned, were mortgaged to Davis, with a view to defraud Jones’ creditors, then the plaintiff cannot recover.
2d. If the jury shall find that the said mortgage was given by Jones without consideration, or the consideration has failed, then they must find for the defendant.
8d. If the jury shall find, either expressly or impliddly that Jones was permitted by Davis to use said slaves as his own, or sell them or pledge them to another person, then their acts will amount to a waiver of his rights to the slaves and he cannot recover.
4th. If the jury shall find that Jones mortgaged the slaves at issue, to Davis, and Davis has since foreclosed the mortgage and awarded execution thereon^%ie said mortgage has merged in a higher security, and Davis has neither the absolute property in the slaves, nor a right to immediate possession, and cannot recover.
5th. If the jury shall find that the slaves were sold by the marshal of the United States, upon process that was prior in time to the mortgage, and afterwards Jones purchased said slaves, yet such purchase did not enure to the benefit of the mortgagee, but to Jones and to defendant who holds finder him, and the jury must find accordingly.
6th. Unless the jury shall find that the right to the slaves is in Davis, and also a right to the possession of them at the bringing the suit, they must find for the defendant.
7th. If the jury shall believe the mortgage from Jones to Davis was gotten up for the purpose of defrauding creditors and others, then the mortgage is void and confers no right on Davis to the slaves in the suit.
8th. If the jury shall find that the consideration of this mortgage has failed, then the plaintiff cannot recover.
9th. That the purchase of the slaves at a judicial sale by Dean, was not a conversion, and unless the jury shall find that Dean was in possession of the slaves at the time when demanded, they must find for the defendant, for a refusal to deliver by Dean when notin possession is not a tortious act, and gives the plaintiff no cause of action.
10th. If the jury shall find that Dean purchased the slaves at a sale under an execution, yet this gave Davis no cause of action, unless the *117 jury shall further find that Davis demanded of Dean the slaves, and that they were in his possession at the time the demand was made and that he refused to deliver them, and without the jury shall so find he cannot recover.
The court gave those numbered 1, 6 and 7 and refused the others; to which refusal the defendant excepted.
The first question we shall notice, is, the right of the plaintiff under the facts in this case to maintain the action.
This court have upon two occasions, Robinson vs. Campbell 8 Mo-R. 365 and 615, held, that after the day of redemption and prior to foreclosure, the mortgagee may maintain an action of trover to recover the value of the mortgaged property; because, the mortgagee, is regarded! in law, as the absolute owner of the property. This is unquestionably a familiar principle of the common law. If therefore the legal title to' the mortgaged property be in the mortgagee and hg»can bring an action of trover for its conversion, before foreclos^érño-^easMi^perceivedy why he may not maintain, an action, at dtoy^trasequent iSMis, before a sale under the decree of foreclosure, whiciu aLMe^^&terh|m of title-It is true, that after judgment or decree |l^mreclusilr^ne |nay reach the property is whose possession the same|mayT^jJqu^wbw!a special writ of fieri facias or order of sale, and subject it to salejBr the payment of his debt; but if, as in the case' at barf=ffi6^í»ftgaged property cannot be reached by the process of the court, but its possession can be traced to a stranger to the mortgage deed, it would be an anomaly in the law to hold that the mortgagee is without remedy. There is nothing in the reason of the thing, why the mortgagee may not after, as well as before foreclosure, have every remedy applicable to his case to ' enforce his rights. The judgment of foreclosure in his favor, cannot have the effect of divesting him of his title acquired under the mortgage ; if so, where rests the title, after the decree, and up to the day of sale ? It does not revert to the mortgagor, nor is it in the law officer, until the property comes into his possession. The title must, therefore, remain where the mortgage deed placed it, until a sale under the decree of foreclosure, when the title passes out of the mortgagee and vests in the purchaser at the sale. This view of the subject may be attended with some difficulties, but it is the only consistent one which we can take.
We shall next inquire which is the better title to the property in controversy, that of Davis who claims under the mortgage deed from Au *118 gustus Jones, or that of Dean, who claims title under White’s mortgage to the county of Washington ? White purchased the slaves at the marshal’s sale made by virtue of a distress warrant against Augustus Jones, for a debt due from Jones as a defaulting officer of the general government.
It appears from the evidence that Augustus Jones had been marshal of the United States for the district of Missouri; and as such, had become a defaulter to the government, for' which, the solicitor of the treasury issued a warrant of distress against his property, and the same having been levied on by the then marshal, the slaves in controversy were sold and purchased by White, and then mortgaged by him to the county to secure the payment of a debt due to the county by Jones and for which White was bound as one of his securities.
The mortgage deed from Augustus Jones and wife to Davis was executed and acknoledged on the 19th June 1838, and filed for record 18th July 1838.
The warrant of distress issued by the solicitor of the treasury department against Augustus Jones and his securities was dated the 25th May 1837. The first levy made under the warrant by the marshal was on the 24th June 1837 ; the next on the 19th July 1837, and the levies recorded in the clerk’s office of the district court of Missouri on the 22d July 1837. On the 1st September 1837 a further levy was made by the marshal on the property of Jones, and the same likewise recorded on the 4th September 1837. All these levies were upon real estate.
On the 15th November 1838, an additional levy was made, embracing the negroes in controversy, which was recorded on the 3d March 1S39. A sale was made of the slaves under the levy last made, which took place on the 11th June 1839, when James M. White became the purchaser and j;ook possession under his purchase.
The act of congress which we suppose the defendant invokes to his aid, is found in the United States statutes at large 3d vol. page 592, entitled, ££ an act providing for the better organization of the treasury department, approved May 13, 1820. The 2d sec. of this act directs the manner of ascertaining the balance in the hands of public officers, unaccounted for, and authorizes the issuing of a warrant of distress therefor, directed to the marshal of the proper district, whose duty it is made to levy the same and collect the amount by a sale of the goods and chattels of the delinquent officer; if the goods and chatels be not sufficient for that purpose, the marshal is required to levy the warrant *119 upon the body of the officer, and commit him to prison, there to remain until discharged by due course of law. Notwithstanding the commitment of such officer, or if he abscond, or if goods and chattels cannot be found sufficient to satisfy the warrant, the marshal is then directed to levy and collect the balance due thereon by distress and sale of the goods and chattels of the sureties of such officer.
The statute then provides that “ the amount due by any such officer as aforesaid, shall be, and the same is hereby declared to be a lien upon the lands, tenements and hereditaments of such officer, and his sureties, from the date of the levy in pursuance of the warrant of distress issued against him or them, and a record of thereof, made in the office of the clerk of the district court of the proper district, until the same shall be discharged according to law.”
From the foregoing it will be perceived that the lien given by the statute, applies only to the real estate of the delinquent officer and his sureties ; and then only from the date of the levy and record thereof. No lien is pretended to be given by the statute, on the personal property of the officer, and if any exists, at any time, it can only attach from and after the actual seizure of the property by the marshal.
Prior to the levy on the slaves in controversy, by the marshal, under the warrant of distress, Jones, the defaulting officer, had parted with his title to the slaves, by his mortgage to Davis. Davis’ title to the slaves being a perfect legal title, prior to the levy by the marshal, it could not be divested by such levy.
The only remaining question which we shall notice, is that raised by the defendant, in consequence of the rejection of the record offered by him in evidence, to prove that the mortgage was fraudulent. The record shows that proceedings had been heretofore instituted by Davis against Jones to recover the debt intended to be secured by the mortgage ; and to that action Jones pleaded : 1st nil debit, 2d payment, 3d fraud in obtaining the bonds sued on, 4th failure of consideration, and 6th set-off. Replications were filed to those pleas. To support his defence Jones filed a bill of discovery against Davis, charging several of the matters alledged in his pleas and calling for a discovery from Davis. No answer was filed, but at the next term of the court thereafter, the cause was dismissed, by agreement at Jones’ cost.
It surely cannot be seriously contended that such a record could prove any fact material between these parties now contesting title to the slaves in controversy. The pleas filed in the cause referred to, were doubtless the act of the attorney, and Jones most likely never saw *120 them i the bill of discoveoy, at most, could only he regarded as the ex-parte declarations of Jones; and the dismissal of the cause could raise sno legal presumption of fraud in the subject matter of the suit, and more particularly where the dismissal is by agreement and at the cost of the ■defendant. The record then, not conducing in anywise, to impeach the consideration of the mortgage deed from Jones to Davis, was properly excluded by the court.
For the foregoing reasons the judgment ought to be affirmed, and the other judges concurring the judgment is affirmed.
Scott, judge.
The objection that an action of trover, cannot be maintained after a forelosure, may have weight in a suitable case. But whatever may be its force, it is not applicable here, as the defendant in the action was no party to the proceedings to foreclose: as to him they were void, and therefore he can derive no advantage from them.