DANIEL ARMEL, *et al.,* v. J. J. LAYTON, *et al.*

REPLEVIN—*Nature of Judgment.* In an action of replevin for the recovery of certain cattle, judgment was rendered in favor of the defendant and against the plaintiff for all the cattle, and in the alternative for $1,948, if a return of a certain portion of the cattle could not be had, and for costs. *Held,* That such a judgment is not necessarily a judgment that the defendant was the absolute, unqualified and unconditional owner of the cattle, but that such judgment is entirely consistent with the theory that the defendant held the possession of the cattle as the mortgagee of the plaintiff, who was the mortgagor.

*Error from Woodson District Court.*

ACTION brought by *Daniel Armel* and *Thomas P. Jones* against *J. J. Layton* and *Butler Wood,* for the value of cer-

tain cattle, in excess of all claims of the defendants against
the plaintiffs, and for relief with respect to some other mat-
ters.    The facts are stated in *Armel v. Layton*, 29 Kas. 576,
*et seq.*, and in the opinion herein.    The plaintiffs demurred
to a portion of the separate answer of the defendant *Layton*,
as follows, to wit:

"Come now the plaintiffs and demur to the latter part of
and all of said third count of the second defense of the sep-
arate answer of the defendant, J. J. Layton, and state as the
grounds of their demurrer, the following:

"1. That said count does not state grounds sufficient to
constitute a defense to the action of these plaintiffs.

"2. All the other statutory grounds of demurrer.

"Wherefore, they pray for judgment as in their petition."

At the June Term, 1884, the court overruled this demurrer,
which ruling the plaintiffs bring to this court for review.

*L. W. Keplinger*, for plaintiffs in error.

*Pickett & Smith*, and *W. H. Slavens*, for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This action grows out of the same facts
as were involved in the case of *Armel v. Layton*, 29 Kas. 576.
That action was replevin, brought by Armel & Jones against
J. J. Layton and Butler Wood for the recovery of certain cat-
tle.    Judgment was rendered in that action in favor of the
defendants and against the plaintiffs for all the cattle, and in
the alternative for $1,948, if a return of a certain portion of
the cattle could not be had, and for costs.    This action is by
the same plaintiffs against the same defendants, for the value
of the cattle in excess of all claims of the defendants against
the plaintiffs, and for relief with respect to some other matters.
In this action the plaintiffs allege in their petition, among
other things, in substance, that the cattle, prior to said replevin
action, were in the possession of the defendant Layton, and
held by him as the mortgagee of the plaintiffs, who were the
mortgagors; that after default on the part of the plaintiffs, the
defendant Layton sold and disposed of a portion of the cattle

to his co-defendant, Butler Wood, and retained the remainder thereof in his possession, and has not accounted to the plaintiffs for any portion of the cattle, or their value; and that if an accounting were had, a large amount would still be due to the plaintiffs over and above all claims of the defendants; and they pray for judgment accordingly. Their petition is verified by the oath of the plaintiff Armel. A temporary injunction was granted, restraining the collection of said judgment for $1,948, until this action can be heard. The defendants answered separately. The following is the second defense contained in the defendant Layton's answer, to wit:

"SECOND DEFENSE.—And further answering the said petition of the said plaintiffs, the said defendant says:

"1. That he admits the making and executing of the written contract and agreement in said plaintiffs' petition set out and referred to, but saith that each, all, and every one of the conditions, covenants and agreements of said contract, on his part were by him fully, faithfully and completely fulfilled, performed and discharged; and the said defendant denies severally and specifically each and every alleged breach on his part of said contract and agreement, or of any of the conditions, covenants or agreements thereof, as in said petition alleged, set out, and averred.

"2. Defendant further saith that he denies that he is indebted unto said plaintiffs in or for any sum whatever for or on account of any advances of money made to him by said plaintiffs at any time or times for the purpose of enabling him to fulfill his part of the said contract or otherwise, and that if any money was ever advanced to him by the said plaintiffs or either of them, at any time or in any manner, or if any payments were ever made by said plaintiffs to or for him or in his behalf, the same have ever been fully and completely repaid by the said defendant and discharged, and that he is not now, nor was he at the time of the commencement of this action, indebted unto the said plaintiffs in any sum whatever.

"3. The said defendant further saith that on or about the — day of October, 1878, and at about the time of the taking away from this defendant by the said plaintiffs of the fifty-five head of steers, as mentioned in the said plaintiffs' petition, it was by and between the said plaintiffs and this defendant contracted and agreed that the said plaintiffs might and should take away the said fifty-five head of steers, and the plaintiffs

then and there and thereby reserved the right to return the said cattle so to be taken away, in the spring, or to keep them permanently as their own, at their own option and election, and that if they chose and elected in the spring following to keep and retain them, then all of the cattle being and remaining in the hands of this defendant after the taking away of the said fifty-five head should vest in and become the absolute property of this defendant; that the said fifty-five head of cattle were taken away, and the said plaintiffs at the spring following wholly failed and refused to return the cattle taken away as aforesaid, and elected and chose to keep and retain the same as their own, and did say and agree to and with this defendant that he, the said defendant, might and should have and keep as his own the portion of cattle remaining in his hands. And the said defendant further saith that the several rights of these parties, both the plaintiffs and the defendant, of, in and to the cattle in said plaintiffs' petition described as 'the one hundred head, more or less,' and 'the twelve cows and their increase,' were and have been finally adjudicated and determined in an action heretofore pending and determined in the district court of Woodson county, Kansas, in which Daniel Armel and Thos. P. Jones, partners as Armel & Jones (the plaintiffs in this action), were plaintiffs, and J. J. Layton (this defendant) and Butler Wood (his co-defendant in this action) were defendants; that said action was brought by the said plaintiffs against the said defendants for the purpose of recovering the said cattle last herein described; that the said cause was tried at the June term, A. D. 1882, of said court, by the court and a jury, and that therein the jury returned a verdict in favor of the defendants (the defendants in this action) and against the plaintiffs (the plaintiffs in this action), and thereupon and thereafter the said court at the October term, 1882, rendered judgment in favor of these defendants (defendants in said action) and against the said plaintiffs (plaintiffs in said action) for the said cattle.    True copies of said verdict and judgment and the proceedings of the said court in the said cause at the said term are hereto attached, marked 'Exhibit A,' and made a part of this answer; that said judgment has not been reversed, vacated, modified or set aside, and remains in full force, virtue, and effect.

"Wherefore the said defendant prays that he may go hence without day, and may recover judgment against the said plaintiffs for his costs in this behalf expended, and that the temporary order of injunction heretofore issued in this cause may be

dissolved, vacated and annulled, and that he may be allowed to proceed in the collection of his said judgment against the said plaintiffs; and for such other relief as in equity and good conscience he may be entitled to."

Exhibit A, referred to in the foregoing answer, contains only a small portion of the record of the former case; it contains, however, among other things, the verdict of the jury and the judgment of the court rendered thereon, which reads as follows:

"We, the jury, find for the defendants that at the time of the commencement of this action they were the owners and entitled to the immediate possession of the property in controversy; that the same (except the ten cows and six calves in controversy) is now wrongfully detained from them by the plaintiffs, and that it is of the value of $1,948." . . . .
"And it is therefore by the court held, considered, ordered and adjudged that the said defendants do have and recover of and from the said plaintiffs the cattle mentioned in said plaintiffs' petition, and by the verdict of the jury in said cause found to be the property of the said defendants and to be wrongfully detained from them by the said plaintiffs, to wit: Ninety-two head of two-year-old cattle, consisting of steers and spayed heifers; ten head of cows and six calves, and eleven head of yearling steers and heifers, part of said cattle branded 'J. L.;' or if a return thereof cannot be had, that they, the said defendants, do have and recover of and from the said plaintiffs the value thereof, to wit: the sum of one thousand nine hundred and forty-eight dollars, so as aforesaid found by the said verdict of the jury. And it is further ordered and adjudged by the court, that the defendants have and recover their costs in this behalf expended."

For the purposes of the decision of this case it is not necessary to quote anything further from Exhibit A, for what we have already quoted is about all that is material. The plaintiffs demurred to a portion of the defendant Layton's answer, in the following words, to wit:

"Come now the plaintiffs and demur to the latter part of and all of said third count of the second defense of the separate answer of the defendant J. J. Layton, and state as the grounds of their demurrer the following:

"1. That said count does not state grounds sufficient to constitute a defense to the action of these plaintiffs.

" 2. All the other statutory grounds of demurrer. Wherefore, they pray for judgment as in their petition."

The court overruled this demurrer, and the plaintiffs, as plaintiffs in error, now bring the case to this court for review. The question intended to be raised by the foregoing demurrer, and the question actually presented by the parties, is, whether the third subdivision of the defendant's defense sets forth a sufficient plea of *res adjudicata*. The plea evidently refers to the aforesaid replevin action as being the former adjudication relied on by the defendants as a defense to this action. The question, therefore, which the parties desire to have considered, is, whether the judgment in the replevin action is a final determination of all or any of the essential questions now involved in this present action with reference to the aforesaid cattle, then and now in controversy. In other words: Is that judgment a final determination that the final contract or arrangement entered into between the parties was not a mortgage, but was an absolute barter or sale upon condition, which condition was afterward fulfilled so that the property in controversy became the absolute and unqualified property of the defendants? The defendants claim that the judgment in that action was a final and conclusive adjudication that the defendants were the absolute and unconditional owners of the cattle, in equity as well as in law; while the plaintiffs claim that the question as to whether the cattle were held by Layton merely as the mortgagee of the plaintiffs or not, was not and could not have been adjudicated in that action; and that the claim of the plaintiffs now presented, that the cattle were in fact so held, is perfectly consistent with the judgment rendered in that action, and with every necessary and essential fact involved therein, and with everything determined therein.

This leads us to the question: What may and what may not be determined in an action of replevin? Title, of course, may be determined in such an action, but very often it is not. A defendant may defeat the plaintiff in such an action by merely showing that the defendant did not have the possession of the property at all, or did not detain it at all; or if he had

the possession of the property, then he may defeat the plaintiff by showing that he had the right to the possession thereof, but without title ; or he may defeat the plaintiff by showing that the plaintiff did not have the right to the *immediate* possession of the property ; and while the judgment · in any one of these cases would be rendered in favor of the defendant and against the plaintiff, yet it would not show that the defendant had any title at all to the property ; nor would it even show in whom the title was vested.   In the present case, however, the defendant, Layton, did detain the property from the plaintiffs, and he detained the same upon a claim of title in himself and in his co-defendant, Wood; and to this extent we think the judgment in the replevin action was a final adjudication ; and it would also be a final adjudication that the plaintiffs were not at that time entitled to the possession of the property, and that the defendants were entitled to the possession of the same; but the nature, character and extent of the defendants' title was not necessarily involved in or adjudicated in that action.   The question of ownership was settled in that action, and it was settled in favor of the defendants, but whether Layton's ownership was that of a mortgagee, or was of some higher or lower character, was wholly immaterial in that action, and may not have been litigated therein.   Layton held his title directly from the plaintiffs, and may have been a mortgagee.   Wood, however, held his title by purchase from Layton, and was of course the absolute and unconditional owner. But was it so adjudicated even as to him?   This question is immaterial in this case; for the real question in this case, as presented by counsel, is, whether it has been adjudicated that Layton was not a mortgagee.   A mortgagee in possession after default is not merely a lien-holder, but he is the real owner of the mortgaged property, and in him is vested the entire legal title.   Mr. Jones, in his work on Chattel Mortgages, says, "Upon default, the title to the mortgaged property becomes absolute in the mortgagee," and cites a number of authorities. (Jones on Chattel Mortgages, § 699; see also 3 Pomeroy's Eq. Jur., § 1229.)   Of course, however, the

mortgagor has the right to redeem the property by performance on his part within a reasonable time and before the mortgagee has sold the property; and in all cases the mortgagor has a right to any excess over the amount which it may require to satisfy the mortgagee's claim; and the right to redeem or for an accounting he may enforce in equity. A contract like the one stated in the defendant's answer may, under some circumstances, constitute a mortgage. (*Bunacleugh v. Poolman*, 3 Daly, 236; *Fowler v. Stoneum*, 11 Tex. 478; *McKnight v. Gordon*, 13 Rich. [S. C. Eq.] 222;) or it may, under other circumstances, constitute a conditional sale, which would become absolute upon default. (*Chapman v. Turner*, 1 Call, [Va.] 280; *Johnson v. Clark*, 5 Ark. 321.) But for the purposes of the question now under consideration, and as now presented by counsel, it is wholly immaterial what the character of that contract was. The only question now to be considered is, whether it has *already been adjudicated* that the contract between Armel and Layton was not a mortgage. No express adjudication of that kind can be found, and the judgment rendered in the replevin action is precisely what it would have been if it had been determined in that action that the contract was a mortgage. Probably the question as to whether such contract was a mortgage or not, was not litigated in that action. If it was, however, then the judgment in that action is in harmony with the theory that it was a mortgage; but if it was not, then it can hardly be said that there has been a final adjudication, or indeed any adjudication, upon the subject; and certainly it cannot be said that it has already been adjudicated that the contract was not a mortgage.

This is substantially an action in equity for an accounting, and it is probably the only kind of action that ever ought to have been brought between the parties. By it, substantial justice may be done. By the former action of replevin, complete justice was not done, and could not have been done, in whatever way the judgment in that action might have been rendered. If the judgment in the former action had been for the plaintiffs, justice would in all probability have been de-

feated; but as it was for the defendants, and as the parties may now in all probability have a fair and just accounting, justice will in all probability be rendered to both parties. This kind of action ought therefore to be encouraged, and we ought not to hold that the former action of replevin was a final adjudication between the parties with respect to the question now presented, unless under the facts and the law of the case no other conclusion could be reached.

The judgment of the court below will be reversed, and the cause remanded with the order that the demurrer to that portion of the defendant Layton's answer which pleads a former adjudication be sustained.

All the Justices concurring.