WILLIAM POLLOCK *et al.*, Appellants, v. C. A. DOUGLAS, Defendant; B. HELLMAN *et al.*, Interpleaders, Respondents.

St, Louis Court of Appeals, February 13, 1894.

1. **Chattel Mortgages**: LEVY ON INTEREST OF MORTGAGOR. So long as the right to the possession of mortgaged chattels remains in the mortgagor, his interest is subject to levy under writs of execution and attachment against him; but his equity of redemption, after condition broken, is not thus subject to levy.

2. ———: MORTGAGE OF EQUITY OF REDEMPTION: RIGHTS OF MORTGAGEE. The equity of redemption may, nevertheless, be transferred by voluntary conveyance after condition broken; and when it is mortgaged, and the mortgagee thereof is put in possession of the mortgaged ·chattels by the mortgagor, though prior to any breach of the condition of his own mortgage, he can recover these chattels, if they are subsequently taken from him under process against the mortgagor.

3. ———: CONDITION BROKEN. If a mortgage is given to secure past due indebtedness, and no provision is made for any further credit, the condition as to default in the payment of the indebtedness is broken as soon as it is made.

*Appeal from the Pike Circuit Court.*—HON. R. F. ROY, Judge.

REVERSED AND REMANDED.

*W. W. Fry* for appellant.

*John M. Barker* for respondent.

BIGGS, J.—This is a contest between the plaintiffs, who are attaching creditors, and the respondents who claim to be prior mortgagees. The evidence tended to prove the following facts: In September, 1890, the defendant, Douglas, was the owner of a small stock of goods. On the fifth day of that month he executed and delivered to one Samuel R. Ross a chattel mortgage on his goods to secure the payment of his note to Ross for $400, dated on the eighth day of April, 1890,

and due one day after its date. By the terms of the mortgage, Douglas was to remain in possession of the goods until default was made in the payment of the debt, etc. Then provision is made for the possession and sale of the property by the mortgagee. The mortgage was filed for record on the day of its execution. On the day following (September 6) Douglas executed another chattel mortgage to secure a debt of $200 due from him to one J. C. Hougland. This debt was evidenced by a note, dated on the fifth day of May, 1890, and by its terms it was made payable one day after its date. This mortgage also provided that Douglas should remain in possession until default was made in the payment of the debt, etc. It was filed for record on the day of its date at 10:30 A. M. Subsequently to the giving of the Hougland mortgage, but on the same day (September 6), Douglas executed a third mortgage on the same stock of goods to secure his note for $427.54 in favor of the respondents. This note was of the same date as the mortgage, and was due one day after its date. This mortgage also provided that Douglas should remain in the possession of the goods until default in the payment of the note, and it also gave the respondents the right to the possession in case Douglas should sell or dispose of the goods or any part of them. This mortgage was filed for record at 11:45 A. M. on the day of its execution. At eight o'clock in the evening of the same day (September 6) the same goods were seized by the constable under the plaintiff's writ of attachment. On September 29, 1890, the respondents filed an interplea, properly verified, in which they claimed to be the owners and entitled to the possession of the property attached. On the trial of the interplea, in addition to what has already been stated, the respondents introduced evidence tending to prove that Douglas, between two and four o'clock on

the sixth of September, surrendered to them the possession of the goods, and that thereupon they locked up the store. The respondents read in evidence a paper signed by Ross and Hougland, in which they agreed that, if the respondents would contest the attachment suit brought by appellants, the claim of the respondents should have the preference and be paid first out of the property conveyed by the several mortgages. This paper was signed two days after the attachment. On the other hand, the appellants introduced evidence tending to show that the possession of the goods was delivered to Ross instead of to the respondents, and that Ross was in possession of the store and was selling goods to customers after the time when the respondents claimed to have taken possession. Under the instructions of the court, the jury returned a verdict for the interpleaders, and judgment was entered in their behalf. The plaintiffs have brought the case here by appeal.

The court instructed the jury substantially: *First.* That if, at the time the mortgages to Ross and Hougland were executed, it was agreed between the mortgagor and the mortgagees therein that the former should continue to sell the goods in the usual course of business, then the conveyances were void. *Second.* That, if Hougland and Ross executed the agreement read in evidence, by which the respondents were given the preference in the payment of their claim, then the mortgages of Ross and Hougland constituted no defense to the interplea of the respondents. *Third.* That, if the jury under instruction number one should find that the mortgages of Ross and Hougland were void, or if the jury found that the agreement mentioned in instruction number 2 was executed by Ross and Hougland, then the verdict should be for the interpleaders.

Neither the instructions of the court, nor those presented by the appellants (which the court refused), properly declared the law. It is the established law in this state, and also in every other jurisdiction so far as our investigation has gone, that, so long as the possessory right of a mortgagor of chattels remains, his interest in the mortgaged property is subject to attachment or sale under execution; but, after condition broken, his right of redemption becomes a mere equity, and it can not be levied upon under execution or seized under a writ of attachment. *King v. Bailey*, 8 Mo. 332; *Yeedell v. Stemmons*, 15 Mo. 443; *Sexton v. Monks*, 16 Mo. 156; *Boyce's Adm'r v. Smith's Adm'r*, 16 Mo. 317; *Dean v. Davis*, 12 Mo. 112; *State to use v. Carroll*, 24 Mo. App. 358; *Bank v. Metcalf*, 29 Mo. App. 384; *Hausmann v. Hope*, 20 Mo. App. 193; *Logan v. Railroad*, 43 Mo. App. 71; Jones on Chattel Mortgages [3 Ed.], sec. 454.

The mortgages to Ross and Hougland are valid as written, and as they were given to secure past due indebtedness, and as there was no provision made in the mortgages for further credit, the conditions as to default in the payment of the debt secured were broken as soon as made. This principle has been applied by the supreme court of Massachusetts to a mortgage which was given to secure a note payable on demand. *Southwick v. Hapgood*, 10 Cush. 121. It was there held that no demand was necessary, and that the condition of the mortgage was broken immediately. That the same principle would more readily apply where the debt secured is overdue, and no provision is made for extension of payment, is obvious. Therefore, under the law of this state the possessory right of Douglass to the goods in controversy having terminated, their subsequent seizure under the appellant's writ of attachment was unauthorized, unless the mortgages to Ross

and Hougland were executed for the purpose of defrauding the creditors of Douglas.

But the important question in this case is, whether the interpleaders are in a position to question the validity of the attachment, or to assert their alleged right to the goods. At the time respondents' mortgage was given, the only interest that Douglas had in the goods (provided the prior mortgages were valid) was a permissive possession coupled with his equity of redemption. While the authorities with great unanimity hold that such a possession and equity can not be sold under legal process, the mortgagor may voluntarily sell and transfer his equity of redemption, which will carry with it his possession. Jones on Chattel Mortgages, section 454. Now, the only thing conveyed by Douglas to the respondents was his equity of redemption. By the terms of the mortgage, the respondent's right to Douglas' possession did not accrue until default in the payment of the debt, unless in the meantime Douglas should violate other conditions by selling the property or some part of it. The evidence of the respondents tended to show that on the afternoon of September 6 Douglas sold some of the goods, and that thereupon the respondents demanded and received from him the possession of the storeroom together with the stock of goods. If these two facts are true, then the possession of the respondents, though prior in time to the maturity of their debt, was good as against the creditors of Douglas, and such possession would entitle them to a verdict on their interplea against the appellants, provided their mortgage was not found to be fraudulent as a matter of fact. In other words, the only issues material on a retrial are: *First*. Did Douglas violate the conditions of the mortgage in continuing to sell the goods, and did the interpleader take possession of them

on that account prior to the levy on the attachment? *Second.* Was the possession of the goods turned over by Douglas to the interpleaders prior to the attachment? If either of these issues is found in favor of the interpleaders, the judgment should be for them, provided the whole scheme was not one concocted to defraud creditors; otherwise, the judgment should be for the attaching creditors. As the instructions of the court failed to predicate the respondents right to recover upon these facts, but submitted the case upon an entirely different theory, the judgment must necessarily be vacated.

Much is said in the briefs about the sufficiency of the description of the property mentioned in the interplea. This inquiry is immaterial, since the record shows that the parties agreed that the property mentioned in the interplea was the same as that attached, and it was further agreed that the property should be sold, and that the interpleaders should deposit in court $200 in lieu of the property, which was done.

In this connection we wish to reiterate the statement that, whether the prior mortgages to Ross and Hougland were fraudulent or not is a matter of no moment, unless there should be evidence tending to connect the interpleaders with Ross and Hougland in a scheme to hinder or delay the other creditors of Douglas. Under such an aspect of the case, the paper signed by Hougland and Ross might be relevant. Aside from this, it is entirely irrelevant, as it in no way strengthens the claim of the respondents to the property as against the plaintiffs.

This proceeding originated before a justice of the peace in Audrain county. On a trial *de novo* in the circuit court of said county, the judgment was in favor of the plaintiffs. The case was taken by appeal to the Kansas City court of appeals (47 Mo. App. 205), and

that court reversed the judgment and remanded the cause for another trial. Subsequently, there was a change of venue to the circuit court of Pike county. There is nothing in the present record or in the case as reported, which would enable us to say that we have the same record before us that was presented to the Kansas City court of appeals. Indeed, we are authorized to presume that the two records are essentially different, because the Kansas City court of appeals says in its decision that, down to the time of the levy under the plaintiffs' writ of attachment, it did not appear that any of the conditions of the mortgages of Ross and Hougland had been violated, whereas the record before us shows that, at the time of the seizure, the debts of Ross and Hougland were past due and unpaid.

There are other matters presented and argued in the briefs, which we do not consider of any importance. Judgment reversed and cause remanded. All the judges concur.