CHARLES FALK v. JACOB DECOU, *Receiver, etc.*

**No. 175.**

1. CHATTEL MORTGAGES—*Replevin.* *Held,* that an allegation of absolute ownership of the property in controversy is sustained by evidence which shows the plaintiff to be a chattel mortgagee in possession.

2. ——— *Defective Description— Cured by Possession.* Possession by the mortgagee cures the deficiencies in the description of the mortgaged property.

3. ——— *Future-acquired Property — Possession.* "When a mortgagee takes possession of the future-acquired property under such a stipulation in the mortgage, he then holds the property by way of pledge, but in the same manner as though the mortgage had been executed at the time he takes possession of the property, and in the same manner as though he had taken the property under and by virtue of a chattel mortgage covering the property." (*Cameron, Hull & Co. v. Marvin,* 26 Kan. 612.)

4. ——— *Instructions Examined.* The instructions complained of in respect to the burden of proof held not erroneous.

Error from Edwards district court; S. W. VANDI-VERT, judge. Opinion filed May 16, 1899. Affirmed.

*F. Dumont Smith,* for plaintiff in error.

*Rossington, Smith & Dallas, Samuel Barnum,* and *Adrian F. Sherman,* for defendant in error.

The opinion of the court was deliverd by

MILTON, J.: This was an action in replevin by the defendant in error against the plaintiff in error to recover the possession of 827 sacks of flour. The petition alleged that the plaintiff was the owner of 4800 sacks of flour, embracing six different brands, as enumerated in the petition, which flour was stored in the mill and warehouse of the Kinsley Milling Company; that the flour was purchased by and delivered to the plaintiff on the 22d day of October, 1890, and

that  thereafter  the defendant  unlawfully  and  wrong-
fully took and detained possession of 827 sacks thereof,
the same being of the aggregate value of $1245.    The
answer was  a general denial.    The case was tried to  a
jury, which returned a large number of special findings
of  fact.    The  verdict  was  for  the  plaintiff,  in  the
alternative,  and the value of  the  flour was  fixed  at
$790.    The  judgment  was  in  accordance  with  the
verdict.

The  basis  of  the plaintiff's claim  of  ownership was
an  instrument  in writing, in  form  a  bill  of  sale, and
in the intention of the  parties and  in  legal  effect  a
chattel  mortgage, given  to  the  plaintiff  by  the  Ed-
wards County Bank on October 22, 1890, and filed for
record  the  following  day.    It  was  signed '' Edwards
Co. Bank, by L. G. Boise, cashier.''    It was executed
and  delivered to secure past-due obligations given  by
the  Edwards County Bank to the First National Bank
of  Larned, as well as an additional loan of about $1800
to  the first-named bank  at the  date  of  the  execution
of the instrument.    The  Edwards County  Bank  was
then, and for several years prior thereto had been, the
entire  owner of the property purported  to be  owned
by  the  Kinsley Milling Company, although  the  title
to  the  milling  company's real  property  stood in  the
name  of  Fred I. Boise  and  W.  L.  Hobbs.    L.  G.
Boise, as the representative of  the Edwards County
Bank, was the general manager of  the  milling  enter-
prise, and  Hobbs was  in  the  employ  of  the  bank,
under  the  supervision of L. G. Boise.    Fred I. Boise
was in no way connected with the transaction herein
mentioned.    Hobbs was in charge of the operating of
the  mill.    It was  agreed between  representatives of
the creditor bank and Boise, for the debtor bank, that
the mortgage should cover 4800 sacks of flour then in

the mill and warehouse.  A count of the sacks of flour having shown the number to be 4244, it was then agreed that enough flour from the wheat in the mill should be ground to bring the total number of sacks of flour up to 4800, and the transaction was thereupon consummated on that basis.  It was agreed that the Larned bank should take immediate possession of the 4244 sacks of flour, and to this end the said bank appointed L. G. Boise as its agent to take charge of the flour, and gave him the following written authority ;

"LARNED, Kan., Oct. 22, 1890.

"We hereby authorize L. G. Boise, of Kinsley, Kan., to sell and ship all the flour belonging to the First National Bank of Larned, all of said flour being stored in the mill and warehouse of the Kinsley Milling Company, Kinsley, Kan.  All sales of said flour are to be made and the same shipped in the name of the First National Bank of Larned, Kan. ; and all bills of lading are to be made in their name and forwarded to them by L. G. Boise.

FIRST NATIONAL BANK OF LARNED.
By J. W. RUSH, *President.*"

Boise thereupon assumed to act as agent for the mortgagee and exhibited the foregoing writing to Hobbs, and instructed him to continue the sale of flour as usual, subject to the said within instructions. The mill was operated for five or six days after the mortgage was given and 600 or more sacks of flour were manufactured during that time, and placed with that on hand.  On October 28 Boise testified that he agreed to sell two wagon-loads of flour in the sack to Faulk, and so informed Hobbs.  That quantity of flour was on the same day delivered by Hobbs to Falk. On October 28, Hobbs delivered several hundred sacks of flour to Falk for the purpose, as stated by Hobbs himself, to satisfy a claim which Falk held against

the milling company for wheat sold and delivered. Falk testified that he intended to give the milling company and the bank credit for the value of the flour he had received and that he had not done so, and did not know the quantity of flour he had obtained. The record is silent as to the number of sacks of flour contained in the two wagon-loads delivered on October 25 and as to the value thereof.

Two of the special findings returned by the jury are as follows :

" 3.  Is it not a fact that at the time the defendant took the flour in controversy that the only possession of the same that the Edwards County Bank, the Kinsley Milling Company, L. G. Boise, and W. L. Hobbs, or either of them, had, was possession of the same as agent for plaintiff?   A.  Yes."

" 6.  Is it not a fact that the defendant, when he took the flour in controversy, took it for the purpose of converting it to his own use in payment of a claim he had against the Kinsley Milling Company or L. G. Boise or some other party?   A.  It is."

The first assignment of error is that the court erred in overruling the demurrer to the plaintiff's evidence. The point argued is, that whereas, the petition and affidavit alleged that the plaintiff was the absolute owner of the property in controversy, the evidence showed a limited ownership thereof, since the bill of sale was merely a chattel mortgage.   The case of *Kennett v. Peters*, 54 Kan. 119, 37 Pac. 999, is relied on as sustaining the contention.   In the case cited the action was for conversion, and the petition alleged absolute ownership under a chattel mortgage.   The supreme court held that the allegation of general ownership was not satisfied by proof of special ownership under the mortgage.   Counsel for defendant in error answer this contention by pointing out that the

Falk v. Decou.

mortgage in the present case was given to secure a
past indebtedness and a present loan, and that the
debt secured by the instrument was due immediately
after its execution. They cite the following in sup-
port of their position : "If a mortgage is given to
secure a past-due indebtedness, and no provision is
made for any future credit, the condition as to default
in the payment of the indebtedness is broken as soon
as it is made." (*Pollock v. Douglas*, 56 Mo. App. 487.)

Counsel also say that as the mortgagee, through its
agent Boise, was in possession of the mortgaged prop-
erty after default, the following from *Armel v. Layton*,
33 Kan. 47, 5 Pac. 441, is controlling in the premises :
"A mortgagee in possession after default is not merely
a lien-holder, but he is the real owner of the mortgaged
property, and in him is vested the entire legal title."
Counsel further cite the following from the syllabus
in *Williams v. Miller*, 6 Kan. App. 626, 49 Pac. 702 :
"A mortgagee in possession is the owner of the per-
sonal property described in the mortgage, as against
an officer who takes the property under an attachment
as the property of the mortgagor ; and possession cures
any defect which may arise from authorizing the
mortgagor to sell the property." We think the posi-
tion of counsel for defendant in error is correct, and
that the court did not err in overruling the demurrer
to the evidence.

Counsel for plaintiff in error next contends that the
description of the flour in the bill of sale, by merely
naming the various brands, without stating the num-
ber of sacks of each kind, was insufficient, and that
the bill of sale was void for uncertainty. Possession
by the mortgagee cured the deficiencies in the descrip-
tion of the property. It may be fairly inferred from
the evidence that when the bill of sale was executed

there was sufficient wheat in the mill to produce, when ground, the number of sacks of flour necessary to make the total number thereof 4800. As fast as it was sacked the flour was placed with that already in the possession of the agent of the plaintiff. (*Cameron, Hull & Co. v. Marvin*, 26 Kan. 612; Jones, Chat. Mort. § 178.)

It is further contended that the oral agreement to manufacture flour which should be subject to the mortgage was void. It was held by the supreme court, in the case of *Cameron, Hull & Co. v. Marvin*, supra, that a party cannot mortgage property which is afterward to be created, purchased, or procured; but it is also decided in the same case:

"When a mortgagee takes possession of the future-acquired property under such a stipulation in the mortgage, he then holds the property by way of pledge, but in the same manner as though the mortgage had been executed at the time he takes possession of the property and in the same manner as though he had taken the property under and by virtue of a chattel mortgage covering the property."

It is further contended that the court erred in instructing the jury that the mortgage on flour to be made out of wheat then on hand would, under the facts proved, be valid up to the total of 4800 sacks of flour contemplated by the mortgage, and that the burden of proof would be on the defendant to show by a preponderance of the evidence that the flour he purchased was not a part of the mortgaged flour. It is claimed that since the burden of proof in a replevin suit is always on the plaintiff, it devolved on the plaintiff in this action to prove that the flour purchased and taken by Falk was part of the flour in existence when the mortgage was made. Counsel says that since none of the flour manufactured after the mort-

gage was given was covered by the mortgage, Falk or any other person had a perfect right to purchase all or any part of it, and that he did so purchase the flour free from any lien.

The jury found that about 600 sacks of flour were manufactured after the execution of the bill of sale, and were placed in the possession of the mortgagee. It must be held, therefore, that Falk wrongfully took from the possession of the mortgagee the flour in controversy, and that the burden was properly placed on him to show that he obtained flour other than that which was received by the mortgagee's agent as part of the 4800 sacks. The judgment of the district court is affirmed.