JORDAN, Appellant, v. PENCE, Defendant; MORRIS, Interpleader, Respondent.

**St. Louis Court of Appeals, March 5, 1907.**

1. **CONTRACTS: Consideration.** The release of some of the several articles covered by a chattel mortgage is a sufficient consideration for the assignment of another chattel mortgage.

2. **CHATTEL MORTGAGES: Foreign Law: Presumption.** In the absence of any evidence of a statute of another State affecting a transaction to be determined by the law of that State, it will be presumed that the common law prevails in such State.

3. ————: **Notice: Record as Constructive Notice.** The recording of a chattel mortgage is not constructive notice of its existence or contents in the absence of a statutory enactment making it so.

4. ————: **Priority of Liens.** On the trial of the rights of property between an attaching creditor and a mortgagee interpleading, their priorities will be determined by the actual liens and the rights of the mortgagee will not be affected by the want of actual or constructive notice to the attaching creditor of his chattel mortgage; if the mortgage is prior in date to the attachment, the interpleader will prevail.

Appeal from Louisiana Court of Common Pleas.— *Hon. David H. Eby,* Judge.

AFFIRMED.

*Ball & Sparrow* for appellant.

"Nothing is better settled in this State than that a subsequent agreement which does not form any part of an original contract, nor is supported by the original consideration thereof, nor by any new consideration, is a mere *nudum pactum* of no force or validity." Macfarland v. Heim, 127 Mo. 327; Williams v. Williams, 67 Mo. 662; McMahan v. Geiger, 73 Mo. 145; Montgomery v. Auchley, 92 Mo. 126.

*Pearson & Pearson* for respondent.

The only issue of fact raised in this proceeding by the pleadings, to-wit: Did the interpleader own the property garnished? was by the court sitting as a jury, found for the interpleader. As there was no instruction either asked or given, the judgment must be affirmed. Heidelback v. Cole, 54 Mo. App. 141; Reinhart v. Crescent B. & L. Assn., 56 Mo. App. 496; Wenzell v. Erath, 48 Mo. App. 479; Kirkwood v. Cairnes, 44 Mo. App. 96.

BLAND, P. J.—Ed A. Glenn, as agent of the owners, in 1904, rented seventy-five acres of a large tract of farming land, in Pike county, Illinois, to Charles Pence, Pence agreeing to sow the whole of the land in wheat and pay one-half of the yield as rent. To secure loans made to him by Glenn, Pence gave the latter a chattel mortgage on his undivided one-half interest in the growing crop, and later (April 1, 1905) gave a second mortgage to his son, W. C. Pence, to secure the payment of three hundred and eighteen dollars due four months after date, with seven per cent interest from date, which was the price of three horses, one cow and one disc harrow sold by W. C. to Charles Pence. At threshing time Glenn contracted to sell the rent wheat to the Shaw-Garner Company, a corporation, at Louisiana, Missouri, for eighty-five cents per bushel, the wheat to be delivered at the corporation's elevators at Louisiana, Missouri, or at another elevator the corporation owned across the river from Louisiana, at Pike Station, in the State of Illinois. The Shaw-Garner Company offered at the same time to take all of Glenn's tenant's wheat at the same price. Glenn communicated this fact to Charles Pence, who, with the consent of his son, agreed that his wheat should go in on the contract and be delivered at the elevator at Pike Station, Illinois, and gave Glenn a written order to collect the proceeds. The wheat was delivered at Pike Station by Charles Pence,

and Glenn collected what was due on his chattel mort-
gage, leaving a balance of $334.03 in the hands of the
Shaw-Garner Company. Plaintiff commenced a suit by
attachment, before a justice of the peace in Pike county,
against Charles Pence. The Shaw-Garner Company was
garnished and in answer to interrogatories filed, stated
that the company had in its hands $334.03, a balance on
wheat sold and delivered to it by Ed A. Glenn, which
wheat it was informed and believed was grown on land
in Pike county, Illinois, rented by Glenn to Charles
Pence. R. O. Morris interpleaded for the fund, claiming
it as assignee of the mortgage given by Charles Pence to
his son W. C. Pence. In due course the cause made by
the interplea was appealed to the Louisiana Court of
Common Pleas, where on a trial *de novo* to the court
sitting as a jury, the issues were found for the inter-
pleader.

1. The only declaration of law asked was by plain-
tiff, to the effect that under the evidence the finding and
judgment should be for the plaintiff. Therefore, the
sole question presented for determination on the appeal
is whether or not there is any substantial evidence in
support of the finding and judgment of the trial court.
It appears from the evidence that W. C. Pence lived on
a farm adjoining the one occupied by his father, Charles
Pence; that in December, 1904, the latter was "sold out
under the hammer," at which sale W. C. Pence bid in
six head of horses, a cow and some farming implements,
at something over four hundred dollars, and borrowed
the money from Morris to pay his bid for the property,
giving Morris a chattel mortgage on said property to
secure the loan. Afterwards, for the purpose of furnish-
ing his father a milk cow and a team to cultivate the
land he had rented, W. C. Pence agreed to sell his father
three of the horses, a cow and a disc harrow and take
as security for the purchase price a second chattel mort-
gage on his father's interest in the growing wheat, if

Morris would agree to this arrangement, and accept the second mortgage as security in lieu of the property to be turned over to Charles Pence. Morris gave his consent to this arrangement and the second mortgage was assigned to him. He gave no credit on the note to W. C. Pence and made no formal release of the property sold to Charles Pence, and it is claimed by plaintiff that there was no consideration for the assignment of the mortgage from W. C. Pence to the interpleader. The evidence shows that Morris gave up his lien on the three horses, the cow and the disc harrow in consideration of the assignment of the mortgage to hm. We think this was a sufficient consideration to give him title to the mortgage.

2. The second mortgage was given and recorded in Pike county, State of Illinois. There is no evidence that plaintiff had any actual knowledge of its existence and no statute of Illinois was offered in evidence, making the recording of a chattel mortgage constructive notice of its existence and contents. On this state of the evidence, plaintiff contends that his lien on the fund in the hands of the Shaw-Garner Company, acquired by the attachment proceedings, is not affected by the mortgage under which the interpleader claims the fund. In the absence of evidence as to what the statute of the State of Illinois is, it will be presumed the common law prevails in that State. [McPike v. McPike, 111 Mo. l. c. 226, 20 S. W. 12.]

In Kelley v. Vandiver, 75 Mo. App. l. c. 440, we said: "The record of a deed cannot be made constructive notice of the existence or contents of the deed, unless made so by positive statutory enactment. [Martindale on Conveyance, sec. 271; Wendell v. Matthew, 20 John. 258; Wade on Notices, sec. 102; Bourland v. County, 16 Ill. 538; Anthony v. Wheeler, 22 N. E. Rep. (Ill.) 494.]"

It follows that plaintiff is not affected by actual or constructive notice of the chattel mortgage, and if he

was claiming the fund under a valid sale or mortgage, his position would be invulnerable. But he is claiming under a mere attachment lien, where his rights depend not upon a valid purchase of the mortgaged property, but on priorities of actual liens. The mortgage being prior in date to the attachment, the interpleader has a priority of liens. [Dean v. Davis, 12 Mo. 112; Draper v. Bryson, 26 Mo. 108; Stillwell v. McDonald, 39 Mo. 282; Potter v. McDowell, 43 Mo. 93; Martin v. Nixon, 92 Mo. 26; 1 Jones on Mortgages, sec. 464.] If Charles Pence had an equity in the fund, a lien upon this equity would attach by the process of garnishment. [Merchants' Nat. Bank v. Abernathy, 32 Mo. App. 1. c. 226; Pollock v. Douglas, 56 Mo. App. 487.] However, under the evidence he was not entitled to possession of the fund and had no equity in it since the fund did not exceed the debt secured by the mortgage, and we conclude that the finding of the learned circuit judge is supported by substantial evidence and affirm the judgment.