No. 110,439

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CAMERON HOWARD,
*Appellant*.

SYLLABUS BY THE COURT

1.

When a person is determined by a Missouri court to be guilty of an offense and placed on probation, that offense counts as a conviction under Kansas law for purposes of the Kansas statute forbidding possession of a firearm by a felon, K.S.A. 2013 Supp. 21-6304, even though the Missouri court suspended imposition of its sentence, the defendant successfully completed the Missouri probation, and under Missouri law the person would not be considered to have been convicted of a felony.

2.

A search without a warrant is allowed when probable cause is combined with exigent circumstances. When an officer observes a plastic baggie in a car with a corner ripped off, the officer's training and experience indicates that such an item is commonly used to transport illegal drugs, and no evidence points to a common, lawful use for baggies with the corner cut off, the officer has probable cause to search the car for evidence of illegal drug activity.

3.

The crime of criminal possession of a firearm, K.S.A. 2013 Supp. 21-6304, is a general-intent crime, requiring that the defendant knowingly possess a firearm but not additionally requiring that the defendant know that his or her legal status makes the possession of a firearm illegal.

Appeal from Johnson District Court; JAMES FRANKLIN DAVIS, judge. Opinion filed December 5, 2014. Affirmed.

*Craig M. Divine*, of Divine Law Office, LLC, of Kansas City, Missouri, for appellant.

*Jacob M. Gontesky* and *Steve J. Obermeier*, assistant district attorneys, *Stephen M .Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., LEBEN, J., and HEBERT, S.J.

LEBEN, J.: Officer Chad Loughman noticed a plastic baggie with a corner missing in a cupholder during a traffic stop. The driver, Cameron Howard, and his passenger were arrested for outstanding warrants. Officer Loughman had the passenger, who was noticeably pregnant, sit on the curb about 6 to 8 feet from the car, and Howard was placed in the back of a police car. Officer Loughman then searched the car for illegal drugs based on the fact that plastic-baggie corners are often used to transport drugs. He found an AK-47 firearm, and the State later charged Howard with criminal possession of a firearm, believing he was prohibited from possessing a firearm because he had pled guilty to first-degree burglary in Missouri in 2006. See K.S.A. 2013 Supp. 21-6304(a)(2). The district court convicted Howard of criminal possession of a firearm after a bench trial on stipulated facts.

On appeal, Howard makes three arguments—that he was not prohibited from possessing a firearm because he received and completed probation for a suspended

imposition of sentence in Missouri (which is not considered a conviction there), that the police discovered the gun during an unlawful search of his vehicle, and that the district court erred in excluding evidence that he lawfully purchased the AK-47 in Missouri after reporting his criminal background for a federal background check.

First, we hold Howard was prohibited from possessing a firearm in Kansas because the Missouri court found him guilty of first-degree burglary and in Kansas a person is "convicted" when a sentencing court makes an adjudication of guilt. See K.S.A. 2013 Supp. 21-5111(d). Second, the State lawfully searched Howard's vehicle. The police are not required to obtain a warrant to conduct a search if there are exigent circumstances and probable cause to search. Here the mobility of Howard's vehicle created exigent circumstances, and the torn plastic baggie and the officer's training and experience regarding such baggies created probable cause to search. Third, we affirm the district court's decision to exclude evidence that Howard lawfully purchased the AK-47 in Missouri. The evidence was irrelevant because criminal possession of a firearm is a general-intent crime and the State had to prove only that Howard possessed the firearm, not that he knew he was considered a convicted felon in Kansas.

We therefore affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In September 2011, Loughman, a Prairie Village police officer with almost 20 years of experience, stopped Howard after he saw him drive through a parking lot to avoid an intersection, a traffic infraction in Prairie Village. When Officer Loughman approached Howard's car, he noticed that the passenger had reclined her seat since he had first observed her. The officer discovered that Howard had an outstanding warrant, so he called for backup. Sergeant James Carney arrived as backup, and he handcuffed Howard and placed him in the back of a patrol car. Officer Loughman then scanned the inside of

3

Howard's car but did not move anything. In the cupholder in the center armrest, he saw a plastic baggie with "a corner ripped out."

Officer Loughman then discovered that the passenger in the vehicle also had an outstanding warrant. He planned to arrest her and had her step out of the car too. Because she was noticeably pregnant, he had her sit, without handcuffs, on a curb about 6 to 8 feet from the passenger door of the vehicle.

Officer Loughman then searched the car for illegal drugs based on his belief that the baggie was drug paraphernalia. He moved the passenger seat forward and into a more upright position and found a loaded AK-47 firearm that had been concealed by the driver's-side-rear and front-passenger floor mats. He then asked Howard about the baggie, and Howard told him that the baggie had once contained marijuana.

The State charged Howard with one count of criminal possession of a firearm by a convicted felon, a severity-level-8 nonperson felony, based on his guilty plea to first-degree burglary in Missouri in October 2006. The Missouri court suspended the imposition of its sentence and granted probation, but the written journal entry stated that Howard had been found guilty of first-degree burglary:

> "Beyond a reasonable doubt, defendant is guilty of the crime. The plea of guilty is accepted and the Court finds that defendant is guilty of the crime.
>
> "IT IS ADJUDGED that defendant, having been found guilty upon a plea of guilty entered on October 19, 2006, is guilty of the offense of: Count I—Burglary First Degree, Class B Felony."

The Missouri sentence was suspended on the condition that Howard serve a presentence probation and comply with its requirements. Howard complied with his probation

conditions, so the Missouri court discharged him from its jurisdiction and ordered that his file be a closed record.

In the current case, the State filed a motion in limine asking to exclude evidence that Howard legally purchased the AK-47 in Missouri. Howard also filed a motion to suppress the evidence that he possessed a firearm, arguing that such evidence was illegally obtained through a warrantless search of his vehicle. The district court granted the State's motion and denied Howard's. The district court found that the twisted or cut-off corner of the baggie was probable cause for the police to search the car, noting that "[t]o many people looking at [the baggie] it may signal nothing, but to a law enforcement officer trained in narcotics interdiction and so forth, it may be quite significant." The judge concluded that there "was enough of a suggestion here that there was narcotics possibly connected with this vehicle."

After the district court denied the motion to suppress, Howard's case was submitted to the court for a bench trial on the following stipulated facts:

"1. On September 15, 2011, Prairie Village Police Officer Chad Loughman conducted a traffic stop on a car near 7720 State Line Road in Prairie Village, Johnson County, Kansas.

"2. Once the car was stopped, the driver was identified as Cameron Howard. Howard was found to have a warrant for his arrest from Leawood Municipal Court. The passenger of the vehicle had a warrant from Prairie Village Municipal Court.

"3. Once both persons were removed from the vehicle, officers found a loaded firearm beneath one of the seats. Howard admitted the firearm belonged to him. Howard told the officers he had purchased the firearm from a store in Raytown, Missouri.

"4. On October 19, 2006, Cameron Howard entered a 'Guilty Plea' to one count of 'Burglary First Degree, Class B Felony' in the Circuit Court of Jackson County, Missouri in Case No. 0616-CR03677-01. . . .

"5. Following the plea, the Circuit Court ordered 'that imposition of sentence be suspended and defendant is placed on probation for a period of three (3) years under the supervision of the Missouri State Board of Probation and Parole.'"

The district court found Howard guilty of criminal possession of a firearm and sentenced him to 18 months of probation with an underlying 7-month prison term. Howard appeals to this court, arguing that his Missouri offense was not a prior conviction, that the police unlawfully searched his vehicle, and that the district court erred in excluding evidence that he legally purchased the AK-47 in Missouri.

ANALYSIS

*I. A Judicial Finding of Guilt by a Missouri Court Constitutes a Prior Felony Conviction Even If the Missouri Court Suspends the Imposition of Sentence and the Defendant Successfully Completes the Missouri Probation.*

Under K.S.A. 2013 Supp. 21-6304, a person is guilty of criminal possession of a firearm in Kansas if he or she possesses a firearm and has previously been "convicted of [certain Kansas felonies] or a crime under a law of another jurisdiction which is substantially the same" as one of those felonies. Howard does not dispute that his 2006 first-degree-burglary offense in Missouri is substantially similar to a Kansas felony. Instead, he argues that the district court should not have allowed the State to use his Missouri burglary as a prior conviction at all because Howard had successfully completed probation for his suspended imposition of sentence in 2008. When a Missouri defendant on a suspended sentence completes probation for the offense, Missouri doesn't count it as a conviction. See Mo. Rev. Stat. § 557.011.2(3) (2000) & (2013 Supp.); *Yale v. City of Independence*, 846 S.W.2d 193, 195-96 (Mo. 1993).

6

We must decide whether Howard's Missouri suspended sentence and completed probation count as a conviction under Kansas law. In a case involving a suspended-imposition-of-sentence offense in Missouri, the Kansas Supreme Court held that the question of whether a defendant has been "convicted" for purposes of the Kansas firearm-possession statute is determined under Kansas law. See *State v. Pollard*, 273 Kan. 706, 711-12, 44 P.3d 1261 (2002).

Whether an out-of-state adjudication constitutes a prior conviction under the Kansas sentencing guidelines is a question of statutory interpretation that we must review independently, without any required deference to the district court. See *State v. Reese*, 300 Kan.___, ___, 333 P.3d 149, 151 (2014); *State v. Arnett*, 290 Kan. 41, 47, 223 P.3d 780 (2010). When interpreting a statute, we first determine the legislature's intent through the statute's language, by giving words their ordinary meaning. *State v. Brooks*, 298 Kan. 672, 685, 317 P.3d 54 (2014); *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 918, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013). If the language is unclear, we use canons of construction, legislative history, or other background considerations to determine what the statute means. 296 Kan. at 918.

As the parties recognize, the *Pollard* case must guide our analysis. Pollard had pled guilty in Missouri to felony first-degree attempted burglary, and the district court had ordered suspended imposition of sentence and placed Pollard on 2 years' probation. The State of Kansas then charged Pollard with criminal possession of a firearm while he was still on probation in Missouri. The Kansas Supreme Court held that the Missouri offense was a prior conviction for the purpose of establishing the prior-conviction element of the Kansas firearm-possession statute but limited its holding to cases where the Kansas offense occurs while the defendant is still on probation for a suspended sentence in another state. 273 Kan. at 714. Howard argues that his case is distinguishable

7

from *Pollard* because at the time of Howard's Kansas offense, he had completed probation for his Missouri offense.

The *Pollard* court found that ongoing probation under a suspended sentence in Missouri counted as a conviction in Kansas based on three lines of reasoning: (1) the legal definition of "conviction" under caselaw and a Kansas statute; (2) the procedural posture of the Missouri felony; and (3) the construction of the term "conviction" for criminal-history-scoring purposes. 273 Kan. at 712. Howard attempts to distinguish his case under each line of reasoning.

Under the first line of reasoning, the *Pollard* court concluded that Kansas statutes and caselaw provide that a person is considered convicted upon being found guilty by a court. 273 Kan. at 712-13 (citing K.S.A. 21-3110[4]). K.S.A. 2013 Supp. 21-5111(d) provides that under the recodified Kansas Criminal Code, the term "conviction" includes "*a judgment of guilt* entered upon a plea of guilty," and that definition applies to words used in the criminal code—including the statute defining criminal possession of a firearm—unless the context clearly requires a different meaning. (Emphasis added.). See K.S.A. 2013 Supp. 21-6304. Under Kansas caselaw, a person is "convicted" when the sentencing court finds the person guilty. *State v. Holmes*, 222 Kan. 212, 213, 563 P.2d 480 (1977).

Here the Missouri journal entry says that the court "adjudged . . . [Howard] guilty of . . . Burglary First Degree" based on his guilty plea, and Mo. Rev. Stat. § 557.011.2(3) provides authority for a court to suspend the imposition of sentence only in cases where the defendant "has been found guilty" of a crime. Under K.S.A. 2013 Supp. 21-5111(d) and *Holmes*, a conviction is contingent upon an adjudication of guilt, not on completing probation requirements. Thus, the *Pollard* court's first line of reasoning applies here and indicates that Howard's Missouri burglary should count as a conviction based on his adjudication of guilt by the Missouri court.

For its second line of reasoning, the *Pollard* court held that its finding that the Missouri burglary counted as a conviction was supported by the fact that in Kansas probation follows a valid conviction and placing a defendant on probation does not affect the finality of the judgment. 273 Kan. at 713. Howard argues that this line of reasoning doesn't apply to his case because his suspended sentence is more comparable to a Kansas diversion agreement than probation.

But as Howard himself acknowledges, a Kansas diversion agreement is significantly different from his suspended sentence in Missouri. In Kansas, the State—and not the court—enters into a contractual diversion agreement with a defendant. The defendant does not plead guilty as a condition of diversion. See *State v. Hankins*, 49 Kan. App. 2d 971, 985, 319 P.3d 571 (2014), *petition for rev. filed* March 19, 2014. If the defendant successfully completes the terms of the diversion, he or she is not prosecuted, but if the defendant is unsuccessful, he or she may be prosecuted and tried on stipulated facts. K.S.A. 2013 Supp. 22-2909(a), (c). Because the Missouri court found Howard guilty of first-degree burglary, his suspended sentence and probation is distinguishable from a Kansas diversion, and the *Pollard* court's second line of reasoning is still applicable to Howard's case.

For its third line of reasoning, the *Pollard* court applied our court's interpretation of the word "conviction" in the scoring of criminal history for the purpose of determining the correct sentence under our sentencing guidelines, which factor in the number of prior convictions. In *State v. Macias*, 30 Kan. App. 2d 79, 83, 39 P.3d 85, *rev. denied* 273 Kan. 1038 (2002), our court counted an out-of-state adjudication of guilt as a prior conviction that increased the sentence for a Kansas crime, concluding that a defendant is considered guilty if his or her factual guilt has been established in the foreign state. See also *State v. Siesener*, 35 Kan. App. 2d 649, Syl. ¶¶ 4-5, 137 P.3d 498 (2005), *rev. denied* 281 Kan.

1381 (2006) (holding that criminal history properly included Missouri offense since defendant who received suspended sentence had pled guilty).

With regard to this line of reasoning, we note that a member of our court, Judge G. Gordon Atcheson, has criticized the *Pollard* court's reliance on *Macias*. See *Hankins*, 49 Kan. App. 2d at 986, 991-92 (Atcheson, J., concurring). Judge Atcheson noted that the *Macias* court had failed to consider the Kansas Criminal Code's definition of "conviction," now found at K.S.A. 2013 Supp. 21-5111(d). In *Hankins*, the defendant received a deferred sentence for a conviction in Oklahoma, and the Oklahoma statute providing for deferred convictions stated that the sentencing court could impose a deferred conviction after the court accepted the defendant's guilty plea but "before a judgment of guilt." 49 Kan. App. 2d at 979; Okla. Stat. tit. 22 § 991c (2011). Judge Atcheson noted that in Kansas a conviction includes "a judgment of guilt" entered upon a plea of guilty. He argued that the Oklahoma deferred-sentencing process—which pointedly excluded a judgment of guilt—should not have counted as a conviction under Kansas law. 49 Kan. App. 2d at 989 (Atcheson, J., concurring); see K.S.A. 2013 Supp. 21-5111(d). He concurred in the majority's opinion counting the Oklahoma offense as a prior conviction only because the Kansas Supreme Court adopted the *Macias* reasoning in *Pollard*. *Hankins*, 49 Kan. App. 2d at 991-92.

But Judge Atcheson's concerns with the *Pollard* court's analysis do not affect the outcome of Howard's case. As we have noted, in Howard's case, the Missouri court "adjudged" Howard guilty of first-degree burglary, and the Missouri suspended-imposition-of-sentence statute applies only when the defendant "has been found guilty." Mo. Rev. Stat. § 557.011.2(3). In his case, the Missouri court satisfied Kansas' definition of "conviction" found at K.S.A. 2013 Supp. 21-5111(d) when it adjudged him guilty and had to determine his factual guilt to accept his plea. See Missouri Supreme Court Rule 24.02(e) (2004).

Howard is right that the *Pollard* court limited its decision to the facts of Pollard's case, and Pollard, unlike Howard, had not yet completed his probation. But we see no reason that this ultimately should affect the result. Kansas law defines a conviction based on the adjudication of guilt, and Kansas law—specifically the Kansas firearm-possession statute—is what applies here. Howard's adjudication of guilt for burglary counts as a conviction under Kansas law. Accordingly, we find that when a defendant receives a suspended sentence in Missouri and successfully completes probation, the suspended sentence counts as a prior conviction to establish criminal possession of a firearm in Kansas.

*II. The Police Lawfully Searched Howard's Car.*

Howard next argues that the police found the AK-47 during an unreasonable search. The Fourth Amendment to the United States Constitution (applied to the states through the Fourteenth Amendment) and § 15 of the Kansas Constitution Bill of Rights protect our right to be secure in our person and property from unreasonable searches or seizures by the government, including law-enforcement officers. Accordingly, warrantless searches by police are considered unreasonable unless a recognized exception permits them. *State v. Sanchez-Loredo*, 294 Kan. 50, 55, 272 P.3d 34 (2012). Kansas has recognized several exceptions to the Fourth Amendment search-warrant requirement: consent, search incident to a lawful arrest, stop and frisk, probable cause plus exigent circumstances, the emergency doctrine, inventory searches, plain view or feel, and administrative searches of closely regulated businesses. 294 Kan. at 55. The State has the burden of demonstrating that the search was lawful. *State v. Julian*, 300 Kan. ___, 333 P.3d 172, 174 (2014).

The district court mentioned three of the exceptions—probable cause plus exigent circumstances, search incident to a lawful arrest, and plain view—when it denied Howard's motion to suppress. We review the district court's denial of a motion to suppress evidence under a two-part standard. Without reweighing the evidence, we

11

examine the district court's factual findings to determine whether they are supported by substantial evidence. *State v. Karson*, 297 Kan. 634, 639, 304 P.3d 317 (2013). In Howard's case, the facts material to the legal issues are not in dispute. The only remaining question is a legal one—whether the district court should have suppressed the evidence. We review the district court's legal conclusion independently, without any required deference to its conclusion. 297 Kan. at 639.

We begin and end our analysis with an exception we find applies here—probable cause plus exigent circumstances. Under this exception, the police may search without a warrant when they have probable cause to search—meaning there is a fair probability that the police will find evidence of a crime—and exigent circumstances. *State v. Jefferson*, 297 Kan. 1151, 1159, 310 P.3d 331 (2013).

Because the police searched Howard's vehicle, this case falls under a subclass of the probable-cause-plus-exigent-circumstances exception: the automobile exception. Under the automobile exception, the mobility of the vehicle itself provides the exigent circumstances. *Maryland v. Dyson*, 527 U.S. 465, 466-67, 119 S. Ct. 2013, 144 L. Ed. 2d 442 (1999); *Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S. Ct. 2485, 135 L. Ed. 2d 1031 (1996); *Sanchez-Loredo*, 294 Kan. at 51. The vehicle's "ready mobility" is an exigency sufficient to excuse failure to obtain a warrant, so the fact that the driver of the vehicle and any passengers are no longer in the vehicle at the time of the search does not make the car immobile so as to eliminate the application of the automobile exception. *Labron*, 518 U.S. 940-41 (automobile exception applied to the warrantless search of defendants' vehicles, even though the defendants had already been arrested at the time of the search). Moreover, Howard does not argue that his vehicle was immobile when the search occurred. With exigency established by the automobile exception, we need only to determine whether the police had probable cause for the search.

The State argues that the torn plastic baggie, Officer Loughman's knowledge (based on his training and experience) that torn baggies are often used to transport drugs, and the passenger's reclined seat established probable cause to search Howard's vehicle. We consider the evidence in its totality and determine whether these factors together created probable cause to search the vehicle. *Sanchez-Loredo*, 294 Kan. at 55.

First, the reclined seat does not significantly add to the probable-cause analysis. It does not suggest that the vehicle contained evidence of a crime—reclining a seat is a common, innocuous activity.

But did the torn plastic baggie and Officer Loughman's training and experience about the use of such baggies create a fair probability that Howard's vehicle contained evidence of a crime? At a hearing on the motion to suppress, Officer Loughman said that baggies torn like the one he had seen in Howard's car are often associated with illegal drugs:

"[Prosecutor:] After that did you see anything that stood out to you?

"[Officer Loughman:] I did.

"[Prosecutor:] What did you see?

"[Officer Loughman:] There was a plastic baggie that had a corner ripped out of that baggie.

"[Prosecutor:] And why did that stand out to you?

"[Officer Loughman:] My training and experience with drugs and transportation of illegal drugs, that is a common practice that people wrap marijuana in particular in cellophane baggies and twist the baggies several times to keep it secured.

13

"[Prosecutor:] Okay. So it wasn't just the presence of a baggie. It was the fact of the corner and the way it was twisted off?

"[Officer Loughman:] Yes."

Many cases have discussed whether the mere presence of plastic bags provides probable cause for a drug search. Courts have found that an officer observing an *intact* plastic baggie, on its own, can't justify a warrantless search. *State v. Runge*, 8 Neb. App. 715, 723, 728, 601 N.W.2d 554 (1999); *State v. Neth*, 165 Wash. 2d 177, 184-85, 196 P.3d 658 (2008); *State v. Sweeney*, No. 07-0336, 2007 WL 4553475, at *2-5 (Iowa App. 2007) (unpublished opinion). And possession of packaging commonly used to conceal drugs generally does not create probable cause to conduct a search. See *Sweeney*, 2007 WL 4553475, at *3-4; 2 LaFave, Search and Seizure, A Treatise on the Fourth Amendment § 3.6(b), pp. 396-98 (5th ed. 2012) & pp. 11-13 (2013-14 Supp.).

But the Kansas Supreme Court has stated that *torn or knotted* baggies, which are associated with illegal drugs, might raise a reasonable suspicion (a less demanding standard than probable cause) to expand a traffic stop. See *State v. Jones*, 300 Kan. ___, 333 P.3d 886, 891, 896-97 (2014); *State v. Coleman*, 292 Kan. 813, 817-18, 257 P.3d 320 (2011). In addition, many courts, including our Kansas Supreme Court, have found that torn or knotted plastic baggies create probable cause when the circumstances of the case include other factors beyond a police officer's knowledge and training suggesting that a crime had occurred. See *State v. Ramirez*, 278 Kan. 402, 407-08, 100 P.3d 94 (2004) (defendant acting nervous, located in bar known for drug activity, and clenching a torn plastic baggie); *State v. Parker*, No. 110,183, 2014 WL 702564, at *6-7 (Kan. App. 2014) (in a high-crime area, officer observed a torn plastic baggie on the passenger's seat of defendant's car, and passenger had glassy eyes and was laughing inappropriately), *rev. denied* 299 Kan. ___ (June 20, 2014); see also *People v. Hilt*, 298 Ill. App. 3d 121, 125-26, 698 N.E.2d 233 (1998) (officer observed torn baggie in defendant's possession in the early morning in an area known for drug trafficking); *Coley v. State*, 215 Md. App. 570,

583-86, 81 A.3d 650 (2013) (officer observed torn baggie and knew the suspect had previously been a heroin user and that torn baggies are often used to store heroin).

A few courts have found that packaging that is rarely used for legal purposes—along with an officer's training and experience—can be the basis for probable cause to seize an item. The Illinois Supreme Court found that an officer had probable cause to seize a small wooden "one-hitter" box of a type officer knew was commonly used to store marijuana, *People v. Jones*, 215 Ill. 2d 261, 271-75, 830 N.E.2d 541 (2005); the Nebraska Supreme Court found that an officer had probable cause to seize brown packages with certain markings the officer knew to indicate cocaine, *State v. Prahin*, 235 Neb. 409, 419, 455 N.W.2d 554 (1990); and the Florida Supreme Court found that detectives in a high-drug-traffic area had probable cause to seize a baseball-shaped object wrapped in brown tape based on their training and experience with narcotics packaging and the fact that people do not frequently carry tape-wrapped baseballs. *Cross v. State*, 560 So. 2d 228, 230-31 (Fla. 1990).

Like one-hitter boxes or tape-wrapped baseballs, people don't often carry baggies with torn corners, and Howard hasn't cited a common, legal use for baggie corners. In the absence of another purpose, the torn corner in this case indicates that the baggie had been used to store illegal drugs, even though the police didn't smell marijuana or observe that Howard or his passenger appeared to be under the influence of drugs.

We acknowledge that whether probable cause exists is a close call here because only two factors—the torn corner on a baggie and the officer's training and experience—support the probable-cause finding. But we find the combination of the two sufficient in this case.

The Fourth Amendment permits the use of an officer's training and experience as a factor in the probable-cause analysis. *State v. Fitzgerald*, 286 Kan. 1124, 1129-30, 192

15

P.3d 171 (2008), *overruled in part on other grounds by Sanchez-Loredo*, 294 Kan. 50; see *State v. MacDonald*, 253 Kan. 320, 324-25, 856 P.2d 116 (1993) (odor of marijuana detected by an experienced law-enforcement officer, standing alone, can provide sufficient probable cause to support a search); *State v. Hufford*, No. 106,018, 2012 WL 3289954, at *3 (Kan. App. 2012) (unpublished opinion) (officer's training and experience in detecting methamphetamine labs was a major factor supporting the court's probable-cause finding), *rev. denied* 297 Kan. 1251 (2013). In fact, courts must "give due weight to inferences drawn from th[e] facts" by police officers when making probable-cause determinations. *Ornelas v. United States*, 517 U.S. 690, 699, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996); see *Jones*, 300 Kan. at ___, 333 P.3d at 896-97. And here the conclusions Officer Loughman made were based on 20 years of training and experience.

We find it especially important in our analysis that torn baggies do not have a common legal purpose. Based on the baggie's torn corner and the officer's experience, there was a fair probability that police would find evidence of a drug crime in the vehicle, thus satisfying the probable-cause requirement. See *Jones*, 300 Kan. at ___, 333 P.3d at 896-97 (noting that cut-off baggie corners are often used for packaging illegal substances); see also *United States v. Fisher*, 912 F.2d 728, 731 (4th Cir. 1990) ("baggie corners are well-known tools of the narcotics distribution trade"). The district court did not err in denying Howard's motion to suppress the evidence found in the search of his car.

*III. The District Court Did Not Err by Excluding Evidence That Howard Had Legally Purchased the Firearm in Missouri.*

Howard's final argument is that the district court should not have granted the State's motion in limine to exclude evidence that Howard legally purchased the AK-47 in Missouri. Howard wanted to admit evidence that he didn't know he was considered a felon because defendants convicted of felonies in Missouri cannot possess firearms and

16

he had successfully completed a federal background check before purchasing the firearm in Missouri. See Mo. Rev. Stat. § 571.070.1(1) (2011). The district court found that the evidence was irrelevant because the State only had to prove that Howard intended to possess the firearm in Kansas, not that he knew he was considered a convicted felon when he did so. Howard claims the district court should have admitted the evidence so that he could have raised a mistake-of-fact defense—that he mistakenly thought he wasn't a felon and therefore didn't have the required mental state to commit criminal possession of a firearm.

We find Howard's argument unpersuasive because his mistake was a mistake of law, not of fact. Howard knew the underlying facts of his case—that he had completed probation for a suspended imposition of sentence in Missouri and that he had been able to purchase a firearm in Missouri. What he didn't know was the law—that he was considered a felon under Kansas' statute prohibiting criminal possession of a firearm. Thus, we need to determine whether the court should have denied the State's motion so that Howard could raise a mistake-of-law defense.

A district court may grant a motion in limine when (1) the evidence in question will be inadmissible at a trial and (2) a pretrial ruling is justified as opposed to a ruling during trial. *State v. Shadden*, 290 Kan. 803, 816, 235 P.3d 436 (2010). When reviewing the first factor—admissibility—we apply a multistep analysis. 290 Kan. at 816-17. We first consider whether the evidence is relevant—meaning it has a tendency to prove a material fact—by looking at whether it is material and probative. See K.S.A. 60-401(b); *State v. Marks*, 297 Kan. 131, 142, 298 P.3d 1102 (2013). Material evidence establishes a fact that is at issue and is significant under the law of the case, and we review whether evidence was material independently, without any required deference to the district court. Probative evidence establishes proof of some fact, and we review the district court's finding about whether the evidence was probative for an abuse of discretion. 297 Kan. at 142. A district court abuses its discretion if no reasonable person would have taken its

17

view or if its ruling is based on an error of law or fact. *State v. Mosher*, 299 Kan. 1, 3, 319 P.3d 1253 (2014).

K.S.A. 2013 Supp. 21-5207 applies to mistake-of-law defenses. Subsection (a) provides that a defendant's ignorance or mistake of law is a defense to a crime if it negates the culpable mental state required for the crime, and subsection (b) lists four circumstances when a defendant has a valid mistake-of-law defense:

"(a) A person's ignorance or mistake as to a matter of either fact or law, except as provided in K.S.A. 2013 Supp. 21-5204, and amendments thereto, is a defense if it negates the existence of the culpable mental state which the statute prescribes with respect to an element of the crime.

"(b) A person's reasonable belief that such person's conduct does not constitute a crime is a defense if:

(1) The crime is defined by an administrative regulation or order which is not known to such person and has not been published in the Kansas administrative regulations or an annual supplement thereto, as provided by law; and such person could not have acquired such knowledge by the exercise of due diligence pursuant to facts known to such person;

(2) such person acts in reliance upon a statute which later is determined to be invalid;

(3) such person acts in reliance upon an order or opinion of the supreme court of Kansas or a United States appellate court later overruled or reversed; or

(4) such person acts in reliance upon an official interpretation of the statute, regulation or order defining the crime made by a public officer or agency legally authorized to interpret such statute." K.S.A. 2013 Supp. 21-5207(a), (b).

18

Our court appeared to limit the mistake-of-law defense to the circumstances listed in subsection (b) in *State v. Ortega*, No. 106,210, 2013 WL 192714, at \*9 (Kan. App. 2013) (unpublished opinion) ("'A person's reasonable belief that his conduct does not constitute a crime' is only a defense in enumerated circumstances," discussing prior version of statute.), *aff'd in part and rev'd in part on other grounds by* 300 Kan. ___, 335 P.3 93 (2014). Based on the statutory language, however, the mistake-of-law defense appears to be available more broadly under K.S.A. 2013 Supp. 21-5207(a), which provides that "[a] person's ignorance or mistake as to a matter of . . . law . . . is a defense if it negates the existence of the culpable mental state which the statute prescribes with respect to an element of the crime."

We will begin our analysis by considering the four circumstances listed in K.S.A. 2013 Supp. 21-5207(b). If any of these apply, then Howard was entitled to pursue this defense.

The first three circumstances under subsection (b) are clearly not applicable. Howard didn't rely on an unpublished regulation, an invalid statute, or an overturned judicial opinion when he possessed the firearm. The fourth circumstance could possibly apply to this case because Howard has argued that he relied on the federal background check, which permitted him to purchase a gun in Missouri. See K.S.A. 2013 Supp. 21-5207(b)(4). But Howard has not established or even argued that the federal background check provided an interpretation of *Kansas* law—under which he's considered a felon—or indicated that he could possess a firearm in Kansas. He also has not argued that the background check provided a legally authorized interpretation of a Kansas statute. As a result, the fourth circumstance also doesn't apply. If the mistake-of-law defense is only available in the circumstances listed in subsection (b), Howard is barred from raising a mistake-of-law defense, and the evidence that he legally purchased the firearm in Missouri was irrelevant.

19

We will next consider Howard's mistake-of-law defense under K.S.A. 2013 Supp. 21-5207(a), which appears to allow the defense when it would negate the culpable mental state required for a particular crime. We therefore must identify the mental state required for this crime and then determine whether Howard could have had that mental state in light of his claimed mistake of law.

Before we present our conclusion about the required mental state, we feel obliged to take a brief detour because there's a strong argument that there wasn't supposed to be *any* required mental state for this crime—if you had a gun and were a felon, you had committed the crime. But that's not our reading of the statutes that have been adopted.

The legislature changed the criminal-intent requirements when it recodified the Kansas Criminal Code in 2011. See L. 2010, ch. 136, sec. 13; K.S.A. 2013 Supp. 21-5202. The new criminal code applies to Howard's offense since it occurred after the new code became effective. See *State v. Murdock*, 299 Kan. 312, 318, 323 P.3d 846 (2014). Determining which culpable mental state is defined in a criminal statute is a question of statutory interpretation that we must determine independently. See *In re C.P.W.*, 289 Kan. 448, 451, 213 P.3d 413 (2009).

Under the present code, a culpable mental state is an essential element of every crime unless the statute defining the crime clearly indicates that the legislature did not intend to require a mental element. K.S.A. 2013 Supp. 21-5202(a). Two statutory provisions require that the legislature be explicit if there is to be no required mental culpability. K.S.A. 2013 Supp. 21-5202(d) provides that "[i]f the definition of a crime does not prescribe a culpable mental state, a culpable mental state is nevertheless required *unless the definition plainly dispenses with any mental element*." (Emphasis added.) K.S.A. 2013 Supp. 21-5203(b) provides that "[a] person may be guilty of a crime without having a culpable mental state if the crime is . . . a felony and the statute defining the

20

crime *clearly indicates a legislative purpose to impose absolute liability for the conduct described*." (Emphasis added.)

The firearm-possession criminal statute does not prescribe the mental state a defendant must have to be guilty of the crime. It merely says that the State must prove two elements—being convicted of a felony and possessing a firearm:

> "(a) Criminal possession of a firearm by a convicted felon is possession of any firearm by a person who: . . . (2) within the preceding five years has been convicted of a felony . . . under the laws of Kansas or a crime under a law of another jurisdiction which is substantially the same as such felony . . . ." K.S.A. 2013 Supp. 21-6304(a)(2).

The Kansas Criminal Code Recodification Commission—which proposed the 2011 criminal-code amendments to the legislature—likely intended that criminal possession of a firearm require no culpable mental state. Neither the pre- nor postrecodification language of the firearm-possession criminal statute contained a mental-culpability term, and the Commission's Final Report said that after reviewing all of the criminal statutes, it declined to add a mental-culpability term only when it believed the legislature intended for the crime to be a strict liability crime:

> "[T]he Commission has reviewed all statutes in the code that include a definition of a crime. The Commission revised the statutes to address the following issues:
>
> . . . .
>
> "(2) In statutes where no culpability term is used, the Commission inserted the culpability term that it felt was consistent with legislative intent except in those instances where it believed that the legislature intended for the crime to be a strict liability crime." Kansas Criminal Code Recodification Commission, 2010 Final Report to the Kansas Legislature, pp. 25-26 (December 16, 2009) (http://www.kansasjudicialcouncil.org/Resources.shtml).

21

So it would appear that the Commission intended that there be no mental-culpability element to this offense. We have taken this detour to discuss the Commission's comments in part because legislators who read the Commission's report before enacting the revised code may have believed that the code's language was consistent with the Commission's report. But we cannot interpret the statute based on the intentions of an advisory commission. We must look at the plain language of the statue and give the words their ordinary meanings. *State v. Brooks*, 298 Kan. 672, 685, 317 P.3d 54 (2014). The language of the statute does not mention *any* mental element; it simply outlaws the possession of a firearm by a convicted felon. The statute doesn't *plainly* dispense with a mental element or *clearly* indicate that the legislative purpose of the statute is to impose absolute liability. We cannot read the Commission's intentions into the statute when they are not readily found there. See *State v. Kendall*, 300 Kan. ___, 331 P.3d 763, 768 (2014).

When the legislature wanted to have no required culpable mental state for a crime, it knew how to do so plainly and clearly so as to comply with the requirements of K.S.A. 2013 Supp. 21-5202(d) and K.S.A. 2013 Supp. 21-5203(b). For example, the statute defining unlawful possession of firearms on certain government property declares it unlawful to possess, "*with no requirement of a culpable mental state*," a firearm in the capitol complex, the governor's residence, state-owned buildings with signs stating that firearms are prohibited, and county courthouses. (Emphasis added.) See K.S.A. 2013 Supp. 21-6309(a). Because the statute defining criminal possession of a firearm doesn't clearly state that it is defining an absolute-liability crime, it requires a culpable mental state. See K.S.A. 2013 Supp. 21-5202(d), (e).

Our detour completed, we return to the question of what level of mental culpability applies to Howard's crime. The culpable mental state required as an essential element of every crime (unless the statute defining a crime clearly indicates it has no

22

mental element) is a *general intent* to commit the crime, meaning the intent to commit the conduct that constitutes the crime. K.S.A. 2013 Supp. 21-5202(a), (e) ("A culpable mental state may be established by proof that the *conduct* of the accused person was committed 'intentionally,' 'knowingly,' or 'recklessly'" [Emphasis added.]; see *State v. Diaz*, 44 Kan. App. 2d 870, 873, 241 P.3d 1018 (2010), *rev. denied* 291 Kan. 914 (2011). Under the general-intent requirement, the State only needs to prove that the defendant acted intentionally in the sense that he was aware of what he was doing. *In re C.P.W.*, 289 Kan. at 454.

Some crimes require an additional specific intent. For these crimes, the statute defining the crime in question identifies or requires a further particular intent that must accompany the prohibited acts. *In re C.P.W.*, 289 Kan. at 454. In *State v. Richardson*, 289 Kan. 118, 121, 209 P.3d 696 (2009), our Supreme Court explained the difference between specific and general intent under the old criminal code. The court analyzed the statute prohibiting intentional exposure to life-threatening diseases: "(a) It is unlawful for an individual who knows oneself to be infected with a life threatening communicable disease knowingly: (1) To engage in sexual intercourse or sodomy with another individual *with the intent to expose that individual to that life threatening communicable disease.*" (Emphasis added.) 289 Kan. at 122; see K.S.A. 2014 Supp. 21-5424(a)(1). The court found that the defendant needed not only the general intent to engage in sexual intercourse or sodomy but also the specific intent to expose a sex partner to the life-threatening communicable disease. 289 Kan. at 122.

In the new criminal code, the legislature has indicated that any statute defining a crime and expressing the mental-culpability requirement as "intentionally" or "with intent" is a specific-intent crime. K.S.A. 2013 Supp. 21-5202(h). The statute defining criminal possession of a firearm does not mention either of those words. And while it is possible that the legislature could have introduced a specific intent with other language, we don't see any in the statute:

23

"(a) Criminal possession of a firearm by a convicted felon is possession of any firearm by a person who: . . . (2) within the preceding five years has been convicted of a felony . . . under the laws of Kansas or a crime under a law of another jurisdiction which is substantially the same as such felony . . . ." K.S.A. 2013 Supp. 21-6304(a)(2).

Since K.S.A. 2013 Supp. 21-5202(a) only requires that each crime have a general-intent requirement and the language of the statue defining criminal possession of a firearm doesn't indicate that the legislature wanted to require a more specific intent, we hold that criminal possession of a firearm is a general-intent crime. See *Kendall*, 300 Kan. at ___, 331 P.3d at 768. Although mental culpability varies based on the wording of a specific statute, we note that several other state and federal courts have interpreted similar felon-in-possession statutes and concluded that the prosecution does not have to prove that the defendant knew of his or her felon status. See *United States v. Games-Perez*, 667 F.3d 1136, 1139-42 (10th Cir. 2012), *cert. denied* 134 S. Ct. 54 (2013); *United States v. Gardner*, 488 F.3d 700, 715-16 n. 2 (6th Cir. 2007); *United States v. Langley*, 62 F.3d 602, 606-07 (4th Cir. 1995); *United States v. Locke*, 542 F.2d 800, 801 (9th Cir. 1976); *Saadiq v. State*, 387 N.W.2d 315, 323-24 (Iowa 1986); *State v. Pelleteri*, 294 N.J. Super. 330, 333, 683 A.2d 555 (1996); *State v. Rainoldi*, 351 Or. 486, 502-06, 268 P.3d 568 (2011). This is also consistent with our Supreme Court's interpretation of an earlier Kansas firearm-possession statute, which held that the crime requires "a willful or knowing possession of the firearm with the intent to control the use and management thereof" but not knowledge that the person was breaking the law barring a felon from possessing a firearm. See *State v. Neal*, 215 Kan. 737, Syl. ¶ 1, 529 P.2d 114 (1974).

Howard argues that the general-intent requirement applies to *both* elements of his crime and that to have a general intent for the felony element, he had to know he was a felon. He appears to base this argument on K.S.A. 2013 Supp. 21-5202(f), which says the culpable mental state for a given crime applies to all of the elements of the crime if the

24

legislature has prescribed a culpable mental state without distinguishing among the elements. We do not find his argument persuasive.

First, there is no specific-intent requirement in the statute defining criminal possession of a firearm, and the statute defining the default mental culpability for criminal offenses, K.S.A. 2013 Supp. 21-5202(a), provides that the State only has to prove the defendant intentionally, recklessly, or knowingly engaged in the *conduct* that constitutes the crime. Here the prohibited conduct is possessing the firearm.

Second, K.S.A. 2013 Supp. 21-5207(a), which says a mistake-of-law defense must negate the culpable mental state, is further limited by K.S.A. 2013 Supp. 21-5204(a), which says the State does not have to prove that a defendant knew about the existence of the criminal statute or the scope or meaning of its terms to prove general intent. Under K.S.A. 2013 Supp. 21-5204(a), the State was not required to prove that Howard knew the phrase "convicted of a felony" in the firearm-possession criminal statute had been interpreted to include people with his criminal background.

Third, K.S.A. 2013 Supp. 21-5202(f) only provides that the culpable mental state for a given crime applies to all of the elements of the crime "[i]f the definition of a crime prescribes a culpable mental state . . . without distinguishing among the material elements" of the crime. Here the legislature had not "prescribed" a culpable mental state because the statute defining criminal possession of a firearm did not include a culpability term.

We therefore conclude that Howard's claimed mistake of law cannot negate the culpable mental state required in his case—even if Howard thought he was not a felon, that would not have negated his general intent to possess the firearm. The State did not have to prove that Howard knew about Kansas law regarding his felon status, and the

25

evidence that he lawfully purchased the gun (as a nonfelon in Missouri) was neither probative nor material in his case.

We noted earlier that district court rulings to exclude evidence in advance of trial are also reviewed to determine whether a pretrial ruling was appropriate. Howard does not challenge the district court's decision to rule on this issue before trial, and the disposition of such an issue where there are no facts in dispute obviously provides a benefit to the parties who, as here, can resolve the remainder of the case while preserving the key contested issue for appellate review. The district court did not err in excluding evidence that Howard had lawfully purchased the AK-47 in Missouri.

The district court's judgment is affirmed.