NOT DESIGNATED FOR PUBLICATION

No. 115,421

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DONNIE L. TAYLOR,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed April 14, 2017. Affirmed.

*Kai Tate Mann*, of Kansas Appellate Defender Office, for appellant.

*Daniel D. Gilligan*, assistant district attorney, *Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., BUSER and POWELL, JJ.

*Per Curiam*:  Donnie L. Taylor was convicted of possession of marijuana and possession of drug paraphernalia. On appeal, he argues that the jury instruction on possession of drug paraphernalia was clearly erroneous. While a portion of the instruction was not factually appropriate, excluding that portion would not have resulted in the jury reaching a different conclusion so it was not clearly erroneous. Taylor also argues that there was insufficient evidence to sustain his convictions due to inconsistencies in the testimony and the fact that the dash camera footage of his arrest was not saved. However, through testimony of the arresting officer the State presented sufficient evidence of

1

Taylor's guilt. Any inconsistencies in the testimony were evaluated by the jury. Accordingly, the district court decision is affirmed.

FACTUAL AND PROCEDURAL HISTORY

Officer Brian Vollweider observed Taylor get into the passenger side of a car. Officer Vollweider was familiar with Taylor from prior experiences. He thought Taylor might have an arrest warrant so he stopped the car, told Taylor about the potential warrant, and asked Taylor to exit the vehicle. According to Vollweider when Taylor got out of the car he was carrying a purple Crown Royal bag and some miscellaneous paperwork. At that point Vollweider was able to confirm the warrant and place Taylor under arrest. He put Taylor in the back of his patrol car and put Taylor's possessions in the front seat. Although Vollweider was in his patrol vehicle when he stopped Taylor, he did not save the dash camera footage of the incident. He explained that the recording was categorized as a warrant arrest, which is only saved on the server for a short time. Vollweider forgot to recategorize the video as a criminal or drug case.

Vollweider transported Taylor to the Reno County Detention Center and left Taylor's property with the jail staff. Deputy Jake Harrison with the Reno County Sheriff's Office searched and categorized Taylor's possessions. While searching the Crown Royal bag, Harrison discovered a plastic baggie of marijuana. The jail called Vollweider to inform him that they found a green leafy substance in Taylor's possessions. Vollweider returned to the jail to take the evidence into custody.

The State charged Taylor with possession of marijuana and possession of drug paraphernalia because the marijuana was in a plastic baggie.

Taylor testified at his jury trial. He agreed with Vollweider's description of their initial contact—Taylor said that Vollweider asked him to exit the vehicle and informed

2

him that there may be a warrant out for his arrest. However, contrary to Vollweider's testimony, Taylor said that he did not have the Crown Royal bag in his hand when he got out of the car. Taylor also testified that after placing him in the patrol car, Vollweider went back to the vehicle Taylor had been in and retrieved some items. Taylor did not observe the Crown Royal bag in the items that Vollweider retrieved.

The jury found Taylor guilty of both counts. The district court sentenced Taylor to 16 months in prison for the possession of marijuana conviction and 12 months in prison for the possession of drug paraphernalia. These sentences were ordered to run concurrently with a sentence from a separate case for which Taylor was also being sentenced.

Taylor appealed.

ANALYSIS

*The jury instruction on possession of drug paraphernalia was not clear error.*

Taylor's first argument is that the jury instruction on possession of drug paraphernalia was clearly erroneous. The State argues that the instruction was not erroneous, but even if it was erroneous it was not clear error because of the overwhelming nature of the evidence against Taylor.

An appellate court reviews a challenge to jury instructions using a multistep analysis. "First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review." *State v. Plummer*, 295 Kan. 156, 163, 283 P.3d 202 (2012). Taylor did not object to the jury instructions below. K.S.A. 2016 Supp. 22-3414(3) states that a party must object to a jury instruction to preserve it for review, "unless the instruction . . . is

3

clearly erroneous." See *State v. Williams*, 295 Kan. 506, 515, 286 P.3d 195 (2012). Therefore, this court can review the jury instruction for clear error. An instruction is clearly erroneous if "the reviewing court is firmly convinced that the jury would have reached a different verdict had the instruction error not occurred." 295 Kan. at 516.

Before determining "whether it was clearly erroneous to give or fail to give an instruction, the reviewing court would necessarily have to first determine whether it was erroneous." 295 Kan. at 515. In order to determine whether a jury instruction is erroneous, the appellate court "should use an unlimited review to determine whether the instruction was legally appropriate." *Plummer*, 295 Kan. at 163. "[T]hen, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction." 295 Kan. at 163. "Only after determining that the district court erred in giving or failing to give a particular instruction would the reviewing court engage in the reversibility inquiry." *Williams*, 295 Kan. at 516.

The instruction given at Taylor's trial is similar to the PIK instruction on drug paraphernalia. PIK Crim. 4th 57.100. However, there are some differences, and Taylor argues that these differences make the instruction legally inappropriate. What follows is a side by side comparison of the PIK instruction and the written instruction given in this case, followed by Taylor's claim of error. The areas appearing in bold type represent the differences in the instructions.

4

| PIK CRIM. 4TH 57.100 AS APPLIED TO FACTS | WRITTEN INSTRUCTION GIVEN |
|---|---|
| "The defendant is charged with unlawfully [*using drug paraphernalia*]. The defendant pleads not guilty. | "Donnie Taylor is charged with the crime of unlawfully *using drug paraphernalia*. He pleads not guilty. |
| "To establish this charge, each of the following claims must be proved:<br>1. The defendant [used *insert description of object*] **as drug paraphernalia** to *insert one of the following:* [contain] *insert name of controlled substance*.<br>2. This act occurred on or about the ___ day of ____, ___, in _____ County, Kansas." (Emphasis added.) | "To establish this charge, each of the following claims must be proved:<br>1. Donnie Taylor *used a plastic baggie* to *contain marijuana*;<br>2. This act occurred on or about the 11th day of March, 2015, in Reno County, Kansas.<br><br>**"Possession means having joint or exclusive control over an item with knowledge of and the intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control.**<br><br>**"A defendant acts intentionally when it is the defendant's desire or conscious objective to do the act complained about by the state."** (Emphasis added.) |

*Omission of the phrase "as drug paraphernalia" from the jury instruction was not error.*

Taylor's first argument is that the district court failed to instruct the jury that Taylor was required to use the baggie as drug paraphernalia. The instruction said that the jury needed to find that "Donnie Taylor used a plastic baggie to contain marijuana." The PIK recommends saying that Taylor used a plastic baggie *as drug paraphernalia* to contain marijuana. See PIK Crim. 4th 57.100.

5

A jury instruction must "fairly and accurately state the applicable law, and an instruction that does not do so would be legally infirm." *Plummer*, 295 Kan. at 161. Here, the omission of the phrase "as drug paraphernalia" does not create a misstatement of the law. See *State v. Miller*, No. 109,716, 2015 WL 3632029, at *8 (Kan. App. 2015) (unpublished opinion) ("The phrase 'as drug paraphernalia' probably adds nothing substantive to the instruction and could be eliminated without changing the meaning or requirements of that element of the offense."), *rev. denied* 303 Kan. 1080 (2016).

The portion of the drug paraphernalia statute under which Taylor was convicted states: "It shall be unlawful for any person to use . . . any drug paraphernalia to . . . store, contain, conceal, inject, ingest, inhale or otherwise introduce a controlled substance into the human body." K.S.A. 2016 Supp. 21-5709(b)(2). Under the statute, the State could support a conviction by showing that any person (Taylor) used any drug paraphernalia (a bag) to contain a controlled substance (marijuana). See K.S.A. 2016 Supp. 21-5701(f)(9) (showing that bags are included in the definition of drug paraphernalia). The instruction covers all of these elements—it stated that the jury must find that "Donnie Taylor used a plastic baggie to contain marijuana." Therefore, this aspect of the instruction was legally appropriate and not erroneous.

*The district court erred by including the definition of possession with the instruction, but it was not clear error.*

Taylor's next argument is that the district court erred by including the definition of possession with the instruction. The PIK presents alternate ways of committing the crime. A defendant can either use an object as drug paraphernalia or possess an object with the intent to use it as drug paraphernalia. While the PIK includes the definition of possession, it is only necessary to give the definition if prosecuting an offender for possession with intent to use an object as drug paraphernalia. PIK Crim. 4th 57.100. The State was prosecuting Taylor under the first method—using a baggie as drug paraphernalia.

6

Because the State was not charging him with possessing a baggie with intent to use it as drug paraphernalia, Taylor argues that it was legally incorrect for the court to instruct the jury on the definition of possession and that by doing so the court "risked confusing the jury."

The definition of "possession" given to the jury matches the definition as it appears in the PIK, and the PIK instruction tracks definition of possession found in K.S.A. 2016 Supp. 21-5701(q). PIK Crim. 4th 57.100. So, the instruction was legally appropriate because it accurately stated the law. However, giving the instruction was not factually appropriate. To be factually appropriate, an instruction "must be supported by the particular facts of the case at bar." *Plummer*, 295 Kan. at 161. Here, the State did not present any evidence that Taylor possessed a baggie with the intent to use it to contain marijuana. Rather, the State's evidence showed that the marijuana was already in the baggie when Deputy Harrison found it.

The district court erred by including the definition of possession with the instruction, but the error does not constitute clear error. To establish clear error, "'the defendant must firmly convince the appellate court that the giving of the instruction would have made a difference in the verdict.' [Citation omitted.]" *State v. Cooper*, 303 Kan. 764, 771, 366 P.3d 232 (2016). Taylor argues that the instruction was clearly erroneous because it confused the jury. He also notes that when reading the instruction the district judge stated: "In Count Two Donnie Taylor is charged with the crime of unlawfully possessing—or unlawfully using drug paraphernalia." The written instruction states that "Taylor is charged with the crime of unlawfully using drug paraphernalia." Taylor argues that this misstatement by the district court when reading the instruction further confused the jury.

It is highly unlikely that the jury would have reached a different verdict if the word possession had not been defined in the drug paraphernalia instruction. The jury

7

found that there was sufficient evidence to convict Taylor of marijuana possession. This shows that the jury believed the State's evidence that Taylor had a plastic baggie of marijuana in his Crown Royal bag. It would be odd for the jury to believe the State's evidence that Taylor had possessed marijuana but not believe the State's evidence that the marijuana was in a plastic baggie. Furthermore, Taylor never argued that the marijuana was not in a baggie—his primary argument was that he never possessed the marijuana at all. Therefore, the district court did not commit reversible error.

*Inclusion of a mental state in the jury instruction was not erroneous.*

Taylor also argues that it was a legal error for the instruction to include a mental state. Taylor notes that the PIK comments state that one or more of the methods of committing the crime lacks a culpable mental state element. See PIK Crim. 4th 57.100. As explained above, the State can either prove that a defendant used an object as drug paraphernalia or possessed an object with the intent to use it as drug paraphernalia. The second method is the method that contains an element of intent. The State elected to prosecute Taylor under the first method. The comments to PIK Crim. 4th 57.100 say to refer to PIK Crim. 4th 52.300 if the crime lacks a mental state. PIK Crim. 4th 52.300 provides commentary on K.S.A. 2016 Supp. 21-5202 and explains what to do when the definition of a crime does not prescribe a mental state. K.S.A. 2016 Supp. 21-5202(d) states that "[i]f the definition of a crime does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element." A culpable mental state can be shown "by proof that the conduct of the accused person was committed 'intentionally,' 'knowingly' or 'recklessly.'" K.S.A. 2016 Supp. 21-5202(a).

K.S.A. 2016 Supp. 21-5202(d) shows that even though the prong of the drug paraphernalia statute under which Taylor was convicted does not contain a mental state, one is nevertheless presumed unless the statute plainly dispenses with the mental state

8

requirement. Taylor acknowledges this rule but still argues that it was improper for the instruction to include a mental state. Taylor's position is that the legislature clearly intended for use of drug paraphernalia to be a strict liability crime. This is an odd argument, because disposing of the mental state requirement actually makes it easier to convict defendants. Even if including the definition of intentional conduct was an error, it was an error that benefitted Taylor because it required the jury to make a finding that it would not have to make if the crime were a strict liability crime.

Inclusion of the mental state of intentional conduct was not legal error. Contrary to Taylor's argument, the drug paraphernalia statute does not plainly dispense with the mental state requirement presumed by K.S.A. 2016 Supp. 21-5202(d). The legislature recodified the Kansas Criminal Code in 2011 and changed the criminal-intent requirements. *State v. Howard*, 51 Kan. App. 2d 28, 44, 339 P.3d 809 (2014), *aff'd* 305 Kan. ___, 389 P.3d 1280 (2017). Taylor points to the fact that the pre-2011 version of the drug paraphernalia statute has the same language as the post-2011 statute. Taylor argues that this constitutes clear legislative intent to omit a mental state.

Taylor cites *Howard* to support his argument. However, *Howard* actually refutes Taylor's argument. In *Howard*, the Court of Appeals had to determine what the mental state was for the firearm-possession criminal statute. The pre-2011 and post-2011 versions of the statute both lacked a mental state, just like the drug paraphernalia statute. The Kansas Criminal Code Recodification Commission issued a report stating that the crime was strict liability. However, because there was no language in the statute itself indicating that it was a strict liability offense the Court of Appeals held that the statute had not plainly dispensed with the mental state. 51 Kan. App. 2d at 45-46. The court suggested that if the legislature wanted to dispense with the mental state element, it could have said that there was "'no requirement of a culpable mental state.'" 51 Kan. App. 2d at 46. Here, there is no language in the drug paraphernalia statute indicating that the offense

9

is strict liability. Thus, it was not legal error for the jury instruction on this offense to include a definition of a mental state.

*Conclusion*

The drug paraphernalia jury instruction deviated slightly from the recommended language in PIK Crim. 4th 57.100. And inclusion of the definition of possession was factually inappropriate. Overall, however, the instruction accurately stated the law and the findings that the jury was required to make to support a conviction for possession of drug paraphernalia. It is highly unlikely that the jury would have reached a different conclusion if the instruction had been given exactly as it appears in the PIK. Therefore, we find no error requiring reversal of the district court's decision.

*There was sufficient evidence to support Taylor's convictions.*

Taylor argues that the State presented insufficient evidence to support his convictions. Specifically, Taylor argues that the State failed to prove that he had "knowledge of the presence of the marijuana and the baggie it was contained in . . . ."

When the sufficiency of evidence is challenged in a criminal case, the appellate court reviews all the evidence in the light most favorable to the State. A conviction will be upheld if the court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt based on that evidence. *State v. Laborde*, 303 Kan. 1, 6, 360 P.3d 1080 (2015). In determining whether there is sufficient evidence to support a conviction, the appellate court generally will not reweigh the evidence or the credibility of witnesses. *State v. Daws*, 303 Kan. 785, 789, 368 P.3d 1074 (2016).

Taylor begins by noting that "the only evidence introduced regarding [his] alleged possession of the marijuana and baggie came only from the testimony of Officer

10

Vollweider and Deputy Harrison." Taylor then notes that the Crown Royal bag that he allegedly had in his hand at the time of his arrest was never introduced into evidence. Officer Vollweider testified that he left the Crown Royal bag at the jail; Deputy Harrison testified that Officer Vollweider took the Crown Royal bag with him. Taylor argues that this discrepancy in the testimony "undermines the testimony of Deputy Harrison." Deputy Harrison had testified that inmates' property could not get intermingled during the intake process. This is contrary to Taylor's argument that the jail attributed ownership of certain items to Taylor that were not actually his. In fact, Taylor testified that he refused to sign the property release sheet when he left the jail because he claimed there were items listed on the sheet that did not belong to him. On appeal, Taylor says that the items appearing on the property release sheet "are odd and seem out of place . . . . For instance, not only was there more than one cell phone, there was also a cell phone case, an unusual amount of phones for an individual."

Taylor also places a lot of emphasis on the fact that Officer Vollweider failed to save the dash camera footage of the arrest that would have proven the existence of the Crown Royal bag. Taylor describes this camera as, "the only piece of evidence" of his guilt in the case.

Taylor's argument shares similarities to the argument made by the defendant in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011). There, Yvonne Ward argued that there was insufficient evidence to sustain her convictions, which arose from four separate cocaine sales. Ward made two arguments regarding sufficiency of the evidence: "(a) the only evidence linking Ward to the crimes was [an informant's] testimony and that testimony lacked credibility and (b) the State failed to present audio, video, forensic, or other direct evidence connecting Ward to the crimes." 292 Kan. at 549. Both the Court of Appeals and Kansas Supreme Court rejected Ward's arguments. 292 Kan. at 549, 582. The courts rejected Ward's first argument because she was asking the court to reweigh the credibility of the witness, and that was "solely within the province of the jury and not

within that of an appellate court . . . ." 292 Kan. at 581. The courts rejected Ward's second argument because, despite the lack of video evidence, there was still sufficient testimony from the informant and police to support her convictions. 292 Kan. at 581-82.

Like in *Ward*, Taylor is asking this court to reassess the witnesses' credibility. Taylor's attorney had an opportunity to cross-examine Deputy Harrison and Officer Vollweider about the inconsistencies in their testimony. See 292 Kan. at 581 (noting that it was important that defense counsel "was given ample opportunity to thoroughly cross-examine" a witness with questionable credibility). The jury had the opportunity to consider Taylor's theory that the Crown Royal bag was not his. In reviewing a sufficiency of the evidence claim, this court cannot reweigh evidence or reevaluate witness credibility.

Taylor's argument that the missing dash camera footage is the only evidence of his guilt also fails for reasons similar to those in *Ward*. The dash camera footage was not the only piece of evidence in the case. Like in *Ward*, the State presented evidence in the form of testimony. Officer Vollweider's testimony established that Taylor had the Crown Royal bag in his hand when Officer Vollweider asked Taylor to get out of the car. The jury apparently chose to believe this testimony. Additionally, as the State notes in its brief, "convictions were obtained for hundreds of years before video evidence existed."

This court does not substitute its judgment for that of the jury. There was sufficient evidence, when viewed in the light most favorable to the State, that Taylor committed the offenses of which he was convicted.

Affirmed.