NOT DESIGNATED FOR PUBLICATION

No. 111,790

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

GERRIAN J. GREEN,
*Appellant.*


MEMORANDUM OPINION


Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Opinion filed October 9, 2015.
Affirmed.


*Mark T. Schoenhofer*, of Wichita, for appellant.


*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*,
attorney general, for appellee.


Before MALONE, C.J., LEBEN, J., and HEBERT, S.J.


LEBEN, J.: Gerrian Green appeals his convictions for aggravated criminal sodomy
and sexual exploitation of a child. On appeal, he challenges both his convictions and
sentences for these crimes.


FACTUAL AND PROCEDURAL BACKGROUND


The case arose out of the relationship between Green and T.D.A., who was 14
years old when the case went to trial in February 2014. T.D.A. is the daughter of a

woman named Yolanda with whom Green had a relationship many years ago. Green had stayed in contact with Yolanda, and when T.D.A. met Green in 2012, T.D.A. thought Green was her father.

Green also thought T.D.A. was his daughter, and he visited her regularly after they met in 2012. By the summer of 2013, when the events at issue in our case took place, T.D.A. sometimes went to Green's house to visit him. He was living with his girlfriend, Pashion, and their three children—Dejon, 11, Ce'azia, 8, and J'veon, 5.

The facts most relevant to us were disputed. At trial, T.D.A. testified to one version of events; Green's girlfriend, Pashion, to another. Green did not testify. Because these are sex offenses, we necessarily describe the underlying actions in some detail. We attempt to do so with respect for T.D.A., against whom the jury concluded Green had committed these crimes.

T.D.A. said she went to spend the night at Green's house because she was mad at her mother. She said she put her belongings in the bedroom Green and Pashion shared before joining the rest of the family in the living room. She and the other children played games and watched television.

T.D.A. said that when she went back into Green's bedroom, Green gave her some K2 to smoke; she also said they watched part of a movie together. She said the K2 made her "feel like [she] was leaning, and it seemed like everything was funny." She said that she later smoked in the living room too.

T.D.A. changed into her nightclothes in the bathroom and returned to the living room couch. She said that Dejon was on another couch, and Ce'azia and J'veon were on a mattress on the floor.

2

At this point, according to T.D.A., Green turned the events toward illegal sexual activities with her. She said he came to her with a jar of Vaseline and a purple dildo. She said that he gave them to her and told her to take the dildo and "stick it"; she understood that he wanted her to "[t]ry sticking it in [her] vagina." She said he also told her to put Vaseline on both sides of her vagina. She said she thought she took the dildo from Green "because I was high, you know, horny. I don't know."

T.D.A. said she put the Vaseline on her vagina but did not use the dildo. She said that Green was walking back and forth in the hallway near the living room and the kitchen; she thought the other children were asleep. After awhile, she said Green sat down next to her, and she handed him the dildo. She said he put it under a couch cushion.

According to T.D.A., Green then draped T.D.A.'s legs across his lap and started touching her legs. She said that she twice told him to stop but that Green pulled her boxers to the side when she closed her eyes; she said he then gave her oral sex. A detective who worked on the case said that T.D.A. told him she had imagined it was her boyfriend doing this. Eventually, she felt Green's bald head and realized it wasn't her boyfriend.

T.D.A. didn't say anything about this to her mother for a couple weeks. When her mother heard her crying during the night, T.D.A. told her what had happened. T.D.A. then told police.

Pashion testified that she was pregnant and awake all night (before going to the hospital the next morning to deliver her child); she never smelled marijuana or K2. She also said that T.D.A. never entered the bedroom she shared with Green that night.

Green's 12-year-old son, Gerrian Green, Jr., also testified. He said that although he lives in St. Louis, he visited his dad briefly that summer and that T.D.A. was at the house one of those nights. He said no one smoked drugs and there was no inappropriate activity.

Several witnesses, including Pashion, a police officer, and a private investigator hired by the defense, testified to the small size of the house. The living room was 12 feet by 14 1/2 feet. A mattress on the floor would necessarily have been quite close to the couch.

The State brought three charges against Green:

- aggravated criminal sodomy, which includes the act of sodomy with a victim when the victim is incapable of giving consent because of the effect of alcohol or a drug or some other substance and the offender knew about or should have been able to detect this condition, see K.S.A. 2014 Supp. 21-5504(b)(3)(C);
- criminal sodomy (as an alternative charge to aggravated criminal sodomy), which includes oral contact with the female genitalia with a girl under age 16, see K.S.A. 2014 Supp. 21-5501(b); 21-5504(a)(3); and
- sexual exploitation of a child, which includes promoting a sexually explicit performance by a child under age 18, see K.S.A. 2014 Supp. 21-5510(a)(4).

The jury found Green guilty of all three charges. At sentencing, however, the State asked the court to vacate the conviction for aggravated criminal sodomy and to proceed with sentencing only for the alternative charge of criminal sodomy. Since Green had two previous qualifying sex offenses (two 2008 convictions for attempted aggravated indecent solicitation of a child), he qualified for a sentence of life in prison even with the less serious criminal-sodomy conviction. The district court sentenced Green to life in prison without the possibility of parole on each of the remaining convictions and ordered that the sentences be consecutive to one another.

Green then appealed to this court.

ANALYSIS

We proceed now to separately review each of the claims Green has made on appeal. In summary, he argues that the evidence wasn't sufficient to convict him; that the district court made erroneous evidentiary rulings by allowing reference to T.D.A. as "the victim" and by refusing his attempt to offer evidence that T.D.A. had previously had sexual experiences; and by denying his motion for a less severe sentence.

I. *The Evidence Was Sufficient for a Jury to Convict Green of Criminal Sodomy and Sexual Exploitation of a Child.*

Green's first claim is that the evidence wasn't sufficient to convict him. In evaluating this claim, we must keep in mind that the jury—which heard the evidence and decides guilt—ruled in favor of the State. Accordingly, to determine whether the evidence was sufficient to support a conviction, we must view the evidence in a light most favorable to the State. We then determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. And we make these determinations without reweighing the evidence or determining witness-credibility questions, which are tasks for the jury. *State v. McBroom*, 299 Kan. 731, 754, 325 P.3d 1174 (2014).

In this light, Green's argument is that T.D.A.'s testimony was so inconsistent and unlikely that no reasonable factfinder could have found him guilty beyond a reasonable doubt. To be sure, there were some inconsistencies in T.D.A.'s testimony, and the home was small enough that someone else should have noticed if the events T.D.A. described actually took place. But T.D.A.'s basic testimony was the same at trial as the version of

5

events she gave to police detective Brent Huhman when she was first interviewed. And the jury clearly found T.D.A. a credible witness.

T.D.A.'s testimony supported both charges:

- Criminal sodomy includes oral contact with the female genitalia when the girl is under the age of 16. T.D.A. testified that Green did that for several minutes.
- Sexual exploitation of a child includes promoting the performance of sexually explicit conduct by a minor. T.D.A. testified that Green gave her Vaseline and a dildo, encouraged her to use them, and stood by while she placed Vaseline on the insides of her vagina.

On the conviction for sexual exploitation of a child, there are some additional points to Green's argument. Each of the terms we've used—"promotion," "performance," and "sexually explicit conduct"—have technical, legal definitions. He argues that two of these—promotion and sexually explicit conduct—were not met by the evidence.

"Promoting" includes "procuring, . . . producing, . . . [or] displaying" . . . "with intent to arouse or gratify the sexual desire or appeal to the prurient interest of the offender or any other person." K.S.A. 2014 Supp. 21-5510(d)(2). Green argues that there was no testimony that T.D.A. became aroused by using the Vaseline or the dildo.

But the promotion requirement may be met where the actor procures the conduct merely *with intent to arouse*, whether arousal occurs or not. As described by T.D.A., Green handed her the Vaseline and a dildo, told her to put Vaseline on her vagina, and told her, as she understood it, to stick the dildo into her vagina. According to her, Green remained in the area before eventually sitting down next to her. She said she then handed him the dildo, indicating she did not want it any more. These facts were sufficient to fulfill the promotion requirement.

6

"Sexually explicit conduct" includes "actual or simulated . . . masturbation." K.S.A. 2014 Supp. 21-5510(d)(1). Green argues that T.D.A. testified that she didn't use the dildo. But the statutory language is satisfied by *simulated* masturbation. T.D.A. testified that she acted as if she was using the dildo after she put the Vaseline in her vagina. Thus this requirement was met too.

We note that the third term—"performance"—is defined by statute as well. It includes performances in various media as well as "any play or other live presentation." K.S.A. 2014 Supp. 21-5510(d)(3). Although Green argues in his brief that he had no "intent to promote a performance," he does not cite to the statutory definition of performance or argue that the evidence did not meet this definition. We therefore do not address that question. See *State v. Reed*, 302 Kan. ___, 352 P.3d 1043, 1050 (2015) (noting that the failure to brief an issue waives that issue on appeal).

Green's final argument on this point in his appellate brief is a contingent one—*if* the State argues on appeal that Green's act of sodomy was part of the conduct that procured a sexually explicit performance by T.D.A., then the State has split a single offense into two charges. This, he contends, would violate rules on multiplicity of offenses. But the State does not make that argument—it argues only that the sexual-exploitation-of-a-child conviction was proved by conduct related to the Vaseline and the dildo.

To support T.D.A.'s testimony, one other witness testified about Green's history of illegal sexual behavior. A.H. said that she knew Green because she used to play with Pashion's little sister. A.H. testified that Green and one of his friends had committed sodomy (through performing oral sex) on her and her cousin, C.W., when they were 12 and 13. (Green's 2008 convictions that qualified him for the life sentence without parole here were based on his acts toward A.H. and C.W.)

7

The jury heard T.D.A.'s testimony. It also heard Green's attorney cross-examine her extensively and summarize the reasons T.D.A. should not be believed in his closing argument. We must leave the credibility determination to the jury; the evidence here was sufficient for it to convict Green of both offenses.

II. *The District Court Did Not Err by Denying Green's Pretrial Motion to Prohibit the Prosecutor and Witnesses from Referring to T.D.A. as "The Victim."*

Green's next argument is that the district court should have granted his pretrial motion to preclude the State and its witnesses from referring to T.D.A. as "the victim" in this case. As a general rule, a district court may grant a pretrial motion to exclude evidence when two factors are present: (1) the evidence in question will be inadmissible at trial and (2) there is a reason to rule before trial instead of during it. See *State v. Howard*, 51 Kan. App. 2d 28, 42, 339 P.3d 809 (2014), *petition for rev. filed* January 5, 2015.

We find two problems with Green's argument on appeal. First, even when a party's motion in limine is denied, the party must object to the evidence at trial to preserve the issue for appeal. *State v. Houston*, 289 Kan. 252, Syl. ¶ 10, 213 P.3d 728 (2009). Green did not make a timely and specific objection at trial when either the prosecutor or one of the State's witnesses referred to T.D.A. as "the victim." Second, this was not the sort of evidence that was "potentially so prejudicial that just mentioning it might affect the trial." See *State v. Coleman*, No. 110,430, 2014 WL 4082110, at *5 (Kan. App. 2014) (unpublished opinion), *rev. denied* July 24, 2015. Thus, whether to exclude it *in advance of trial* would have been a discretionary call for the district court even if we presume that the evidence (calling T.D.A. "the victim") was inadmissible. See *State v. Shadden*, 290 Kan. 803, 818, 235 P.3d 436 (2010). We find no abuse of discretion in declining to make that ruling before trial.

8

Even if the district court's ruling had been in error, the jury's verdicts would not be set aside if the error was harmless. See *State v. Betancourt*, 299 Kan. 131, 144, 322 P.3d 353 (2014); *Shadden*, 290 Kan. at 830. An error involving the erroneous admission of evidence is harmless unless there is a reasonable probability that the error affected the trial's outcome. *Betancourt*, 299 Kan. at 144. Here, there were only four references at trial (by the prosecutor and by the police detective) to T.D.A. as "the victim"—in a trial that lasted 5 days. The jury was instructed at the start of trial that "Mr. Green, the defendant, as he sits here right now is presumed innocent of all charges." At the trial's conclusion, the jury was instructed that it must "presume that he is not guilty unless you are convinced from the evidence that he is guilty." There is no reasonable probability that four references to T.D.A. as "the victim" during this trial affected the jury's verdict.

III. *The District Court Did Not Abuse Its Discretion When It Denied Green's Motion to Present Evidence of T.D.A.'s Previous Sexual Conduct.*

Green's third claim is that the district court should have allowed him to present testimony that T.D.A. had had sexual experiences before these events. In his motion to the district court, Green referenced a statement that T.D.A. had made to investigators, in which she said that she and Green had been talking about sex and that she had said, "I was curious of doing it with my boyfriend" and "he said he'd help me, because it didn't work the first time when I tried to do it with my boyfriend." From this, Green argues that T.D.A.'s statement "could mean only one thing: she was sexually inexperienced, and was curious." Thus, he contends, the district court should have allowed him to present evidence of T.D.A.'s other sexual experiences.

To consider this argument, we must start with the Kansas rape-shield law, K.S.A. 2014 Supp. 21-5502. Although generally called the rape-shield law, it applies in prosecutions for several crimes other than rape, including criminal sodomy and the sexual

exploitation of a child. In such cases, "evidence of the complaining witness' previous sexual conduct . . . shall not be admissible" unless several procedural steps are met.

Green failed on step one—the defendant must file a motion at least 7 days before trial unless the court waives that requirement. K.S.A. 2014 Supp. 21-5502(b). Here, the district court denied Green's motion in part on the basis that it wasn't timely.

Even if the district court had excused the timing of the motion, its ruling that the evidence wasn't sufficiently relevant to be admitted was not an abuse of discretion. See *State v. Huddleston*, 298 Kan. 941, 961-62, 318 P.3d 140 (2014) (applying abuse-of-discretion standard to district court's determination of probative value of evidence); *State v. Lowrance*, 298 Kan. 274, 291, 312 P.3d 328 (2013) (applying abuse-of-discretion standard to district court's determination that prejudicial nature of evidence outweighed its evidentiary value). As the district court noted, an expression of "[c]uriosity regarding sex . . . does not equal virginity." Even though T.D.A. said she was curious about having sex with her boyfriend, Green cites no place in the record where anyone claimed T.D.A. was a virgin or claimed at trial that she was naïve about sex. In fact, T.D.A. specifically testified that she had thought it was her boyfriend performing oral sex before she felt Green's bald head. The district court did not abuse its discretion by denying Green's day-of-trial motion to present testimony of T.D.A.'s other sexual experiences.

IV. *The District Court Did Not Abuse Its Discretion When It Denied Green's Motion for a Less Severe Sentence.*

Green's final claim on appeal is that the district court should have granted Green a lesser sentence based on his presentencing motion for a downward-durational departure. The State responds that Green could not have received a shorter sentence because he was sentenced as an aggravated habitual sexual offender. We agree with the State.

10

Green was an aggravated habitual sexual offender as that term is defined under K.S.A. 2014 Supp. 21-6626. It provides that a person who has a conviction after July 1, 2006, for at least two offenses defined in the statute as a "sexually violent crime" receives a life sentence without parole. Green's 2008 convictions for attempted aggravated indecent solicitation of a child qualify. See K.S.A. 2014 Supp. 21-6626(c)(2)(E), (L).

Significantly, not only does the statute call for a life sentence without parole, it also provides that the sentence cannot be modified:

> "An aggravated habitual sex offender *shall be sentenced to imprisonment for life without the possibility of parole*. Such offender shall spend the remainder of the offender's natural life incarcerated and in the custody of the secretary of corrections. An offender who is sentenced to imprisonment for life without the possibility of parole *shall not be eligible for* commutation of sentence, parole, probation, assignment to a community correctional services program, conditional release, postrelease supervision, functional incapacitation release pursuant to K.S.A. 22-3728, and amendments thereto, or suspension, *modification or reduction of sentence*." (Emphasis added.) K.S.A. 2014 Supp. 21-6626(a).

Green argues that he was still entitled to have the district court consider a lesser sentence under K.S.A. 2014 Supp. 21-6815, which allows for motions to depart from presumptive sentences under the Kansas Sentencing Guidelines Act, K.S.A. 2014 Supp. 21-6801 *et seq*. But the life sentence in K.S.A. 2014 Supp. 21-6626(a) is not a guidelines sentence, and K.S.A. 2014 Supp. 21-6626(a) provides that a person with two qualifying sexually violent offenses after July 1, 2006, *shall be* sentenced to life in prison without the possibility of parole. That seems clear enough, and the legislature added that the offender shall not be eligible for various kinds of sentence commutation, modification, or reduction. The district court did not err when it denied Green a lesser sentence.

We affirm the district court's judgment.